# Barton, *et al. v.* Fitzpatrick, *et al.*

*Bill to Determine the Right of Possession and Control of Church Property.*

(Decided Feb. 12, 1914.   Rehearing denied May 24, 1914.
65 South. 390.)

1. *Religious Societies; Control of Property; Determination by Court.*—In determining the right to possession and control of church property, between factions, the courts cannot have regard for the wishes of the majority of the congregation, unless expressed in valid form; hence, a paper circulated among the members, however numerously signed, cannot take the place of a decision by the congregation acting as an organized body in conformity to the law and practices of the church.

2. *Same.*—Where there are factional differences in an ecclesiastical body, in dealing with the disputed property rights between the factions, courts give effect to the will of that part of the organization acting in harmony with ecclesiastical laws, usages, customs, and principles which were accepted among them prior to the dispute.

3. *Same; Conflicting Claims of Officers.*—As between persons who were elected deacons thereof, and others who are withholding it, claiming to have been elected their successors, the property having been conveyed in fee simple forever to persons denominated "deacons and trustees" of the church, "and to their successors in office of said trusteeship," the termination of the right to possession and control of the property of an unincorporated church depends on the present location of the legal title which depends on whether complainants or respondents are now commissioned to represent the church according to the provisions of its constitution and laws bearing on the election and terms of its officers.

4. *Same; Business Meeting; Quorum.*—In the absence of statute or by laws, a quorum for the purpose of elections and voting on other questions requiring the sanction of the members, consists of those assembled at a meeting regularly called and warned, though such number be not a majority of the whole, the organization of the church being congregational.

5. *Same; Notice.*—While customary business may be transacted without special notice at customary meetings of members of a church of congregational organization, notice of a special meeting to transact special business is necessary, and must emanate from a majority of the quorum or from duly constituted authority; hence, such a notice, given at a regular meeting by a minority member of the board of deacons, is ineffectual, and action taken at a meeting so called is without authority.

6. *Same; Deposing Pastor.*—A church may, at any time, so long as it proceeds according to law, depose its pastor, though employed for a fixed term at a fixed salary, and without first paying the salary in arrears, so far as the civil courts are concerned; where the church is of a congregational organization, the only question open to the civil courts is whether the church in fact, acted as a congregation.

7. *Same; Deacons; Tenure of Office.*—Although their tenure has been fixed, the tenure of office of deacons of a church who hold the legal title to the church property as trustees, and are charged with the temporal affairs of the church, is at the discretional disposal of the congregation, the church being of congregational organization.

APPEAL from Talladega City Court.

Heard before Hon. CECIL BROWNE.

Bill by W. F. Fitzpatrick and others against J. P. Barton and others to determine the right of possession and control of church property. Decree for complainants and respondents appeal. Affirmed.

KNOX, ACKER, DIXON & SIMS, J. W. VANDIVER, and W. B. CASTLEBERRY, for appellant. The court erred in refusing to dissolve the preliminary injunction.—*Weeks v. Bynum,* 158 Ala. 231; *Johnson v. Howe,* 154 Ala. 494; 16 Cyc. 199. All complainants must be entitled to relief or none can be granted.—*Davis v. Williams,* 130 Ala. 530. In the Baptist church the office of deaconship is a spiritual function and carries with it no temporal right unless specifically conferred by an affirmative act of the church.—*Stewart v. White,* 128 Ala. 208; *Allison v. Little,* 85 Ala. 512. With reference to the finding of the chancellor, counsel cite.—§ 5955, Code 1907; *Ray v. O'Neill,* 168 Ala. 361; *Andrews v. Frierson,* 144 Ala. 470; *Woodrow v. Hawving,* 105 Ala. 240.

[Barton, et al. v. Fitzpatrick, et al.]

With reference to the finding of the master in chancery, counsel cites Sims Ch. Pr. p. 401, and cases there cited. The termination of the relation of pastor is not dependent upon his election to a definite time, and he may be dismissed at any time.—34 Cyc. 176. In conclusion counsel calls the court's attention to the case of *Morris Street Baptist Church v. Dodd,* 100 Am. St. Rep. 127. Under these authorities it must be held that Fitzpatrick was legally deposed as pastor.

RIDDLE & BURT, for appellee. No brief reached the Reporter.

SAYRE, J.—This litigation arose out of a dissension which consumed the vitals of Peace Baptist Church (colored), an unincorporated organization holding to the faith and practice of the Missionary Baptist Church. Some of the members ardently desired to be quit of the ministrations of the pastor, Fitzpatrick, and sought to oust him from his pastorate; others desired that he be retained. A majority of the board of deacons, some of whom had been placed upon the board by questionable means, adhered to Fitzpatrick, so that those members of the congregation opposed to him found it hard to get the question at issue before the body of the membership. in a manner at once seemly and sanctioned by the practice of the church; Fitzpatrick and his faction refusing countenance to any movement looking to a meeting of the congregation for the disposal of the controversy. Finally, however, one of the opposing deacons arose in a meeting, held for worship, and gave notice that there would be a meeting of the congregation on a day named for the purpose of declaring the pastorate vacant and electing a successor to the then incumbent. This call for a meeting had not the approval of the pastor or a ma-

jority of the board of deacons, nor was the question whether such meeting should be called for the designated purpose put to the congregation then assembled for decision, and the clear effect of what Fitzpatrick in the pulpit did and said on that occasion was to indicate to the congregation that the notice amounted to nothing. A meeting was, however, held pursuant to the notice, with result that resolutions were there unanimously adopted purporting to oust Fitzpatrick and electing defendant Barton as his successor pro tempore. Deacons were also elected to replace those who adhered to Fitzpatrick. Since then Barton and his faction have held possession of the church property. At a later meeting they elected Barton pastor for an indefinite term. Fitzpatrick's faction ignored these meetings and took no part in them. The purpose of the bill, filed by Fitzpatrick and his deacons, was to have a legal determination of the right to the possession and control of the church property, and, it seems, complainants would have had the court to restore Fitzpatrick to his prerogatives as pastor. The court below very properly stopped with a decree settling the rights of the parties in the church property.

Appellees (complainants below) appear to have insisted in the court below that the meetings at which these things were done by the opposition were without authority and contrary to the established usage of the Missionary Baptist Church because the first meeting, upon which the claim of Barton and his party to represent the body of the local church depends for regularity, was not called or authorized by a majority of the board of deacons, nor by a majority of the congregation assembled on the occasion of the notice, and was itself composed of a minority of the entire membership. In the absence of a brief for appellees defining their posi-

tion, we infer their insistence was as above stated, for
the reason that the adversary brief is directed to this
point, and appellees, so far as we are advised, had no
other standing on the facts shown in evidence. If we
might enter upon a consideration of the moral status of
the opposing officials, in respect to which a good deal
crops out in the records, or if we could take cognizance
of an informal expression of preference by a majority
of the congregation acting individually, such as was
shown by a paper put in evidence on the hearing of the
motion to dissolve the preliminary injunction, there
might be little difficulty in reaching the conclusion that
appellants should prevail in this controversy; but it is
quite clear that the court is not concerned about the
moral worth of opposing officers of the church, that
being a question for the church alone, nor can the court
have regard for the wishes of the majority unless ex-
pressed in valid form, and that a paper circulated among
the members of the congregation, however, numerously
signed by them, cannot supply the place of a decision
by the congregation acting as an organized body in con-
formity with the law and practice of the church.—Case
of *St. Mary's Church*, 7 Serg. & R. (Pa.) 517.

It is familiar law that where factional differences oc-
cur in an ecclesiastical body, the rule of the civil courts
in dealing with the property rights disputed between
the factions is to give effect to the will of that part of
the organization acting in harmony with the eccleciasti-
cal laws, usages, customs, and principles which were ac-
cepted among them before the dispute arose.—*Gewin v.
Mt. Pilgrim Church*, 166 Ala. 349, 51 South. 947, 139
Am. St. Rep. 41, and cases there cited.

The conveyance under which Peace Church claims
and holds the property rights in question vested those
rights in two persons, therein denominated "deacons

and trustees of the Peace Baptist Church," to whom "and to their successors in office of said trusteeship" title was made in fee simple forever. Complainants claim to be the regularly elected and ordained deacons of the church, and so to be successors in title to the original trustees, now dead, and are proceeding against the defendants, named in the bill, on the ground that the latter wrongfully claim to be deacons and officers of the church, and as such are withholding possession and control of the church property. The legal right of the controversy depends upon the present location of the legal title (*Stewart v. White,* 128 Ala. 202, 30 South. 526, 55 L. R. A. 211), and the location of the title depends in turn upon the question whether the complaining or defending parties are now commissioned to represent the church according to those provisions of its constitution and laws which bear upon the election and terms of its officers. If the question were whether the property was dedicated to the propagation of any particular religious dogma, and the dispute between the parties had arisen out of differences of faith and religious practice, the aid of the court to prevent a perversion of the trust might be invoked by any person interested in the trust property, though not clothed with the legal title.—*Morgan v. Gabard,* 176 Ala. 568, 58 South. 902. But that is not this case. There is here no difference as to religious faith and practice. The simple question is, Who are now the rightful pastor and deacons of the church?

This church is a pure democracy, and, apart from some general regulations which have been accepted as a sort of covenant by all the churches of that denomination, each church is a law unto itself in the management of its own affairs. Its organization is congregational, and each church must of necessity be governed by laws which inhere in that form of government.

"The rule of the common law seems to be that, where a body is composed of an indefinite number of persons, a quorum, for the purposes of elections and voting upon other questions, which require the sanction of the members, consists of those who assemble at any meeting regularly called and warned, although such number may be a minority of the whole, in which case a majority of those who assemble may elect, unless there is a different rule established by statute or valid by-law."—34 Cyc. 1127, note.

That such is the law of this church necessarily follows from the nature of its constitution. It is also proved by the evidence taken. It results that every meeting, duly assembled, constitutes a quorum of the church for the transaction of the business for which it is assembled, and a majority of the quorum has the right to speak for the entire congregation, and its expressed will stands as the law of the church until it is changed or repealed by a subsequent meeting with similar authority. At customary meetings customary business may be transacted without special notice. But it is obvious that in a body of that constitution some form of notice that a special meeting will be held for the transaction of unusual and important business is necessary, and must emanate from the majority of a quorum, or from duly constituted authority, in order that a minority may bind the entire membership. It appears in proof that the board of deacons had authority to call the meeting desired by the faction opposed to Fitzpatrick. Perhaps the pastor also had that power. Failing in these quarters, the opposition should have appealed to the congregation then assembled to call a meeting for the purpose desired, or to some future regular meeting assembled for some customary purpose of the church, for so only could the entire membership be affected by

the notice and be given an opportunity to express their wishes, and so only can the theory of a purely democratic government be worked out in seemly and orderly practice. In this the faction represented by appellants failed, and it results that their subsequent steps were irregular, and without authority of the church law. We are constrained, therefore, to hold that the point against the title of appellants was well taken, and that the chancellor correctly ruled the case in favor of appellees.

The pastor of a church in his pastoral office performs a spiritual function. Spiritualities are beyond the reach of the temporal courts. It follows that a church which has employed a pastor, though the employment be for a fixed term and at a fixed salary, may at any time, so far as the civil courts are concerned, depose him from his spiritual office, subject only to inquiry by the courts as to whether the church, or its appointed tribunal, has proceeded according to the law of the church; nor can the payment of his salary, though in arrear, be made a condition precedent to his deposition. And in the case of a church organized on the congregational plan the inquiry is limited to the determination whether in fact the church has acted as a congregation.—*Morris Street Church v. Dart,* 67 S. C. 338, 45 S. E. 753, 100 Am. St. Rep. 727; *State v. Bibb Street Church,* 84 Ala. 23, 4 South. 40. In this case the deacons, as trustees, hold the legal title to the church property and they are charged with the temporal affairs of the church, but we apprehend there is no solid reason why their tenure of office should not be at the discretionary disposal of the congregation. They have no individual pecuniary interest in the church property, nor in their tenure of office as opposed to the interest or wishes of the congregation, and no property right can be conserv-

ed by holding, even where their tenure has been fixed, that they may persist in holding office against the later judgment of the congregation duly expressed. The church, its offices, and its property in organizations of this character, as for any right in its individual members, and aside from heretical breaches of trust, must remain constantly subject to the disposal of the majority, to be expressed on any occasion when due notice has been given and every member has an opportunity to vote. In the case at hand it appears that the complaining deacons hold by indefinite tenure. Fitzpatrick claimed in the court below that he had been employed at a stipulated salary, and for a term not yet expired, and that his salary was in arrear. But those were matters of no consequence in this case, and are referred to merely in order to make clear the meaning of the observation with which we will conclude an unprofitable discussion, namely, that appellants still have their appeal to the congregation.

Affirmed.

ANDERSON, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.