(90 South. 602)

**BLOUNT et al. v. SIXTEENTH ST. BAPTIST CHURCH. (6 Div. 419.)**

(Supreme Court of Alabama. June 30, 1921. Rehearing Denied Oct. 13, 1921.)

1. **Injunction ⬥103—May be had to prevent violation of criminal law impairing property rights.**

Objection that bill by church against certain members and others to enjoin an interference with the church property and prohibit certain parties from governing the church, on the ground that injunction could not be had to prevent a violation of criminal law, was inapt, where complainant's right to operate and enjoy its properties as a church and by its congregation was so interfered with as to amount to an impairment of its right of property.

2. **Evidence ⬥5(2)—Judicial knowledge taken of general religious matters.**

Courts take judicial knowledge of general religious matters.

3. **Religious societies ⬥7—Membership in corporation in no sense same as membership in congregation.**

A corporation of a Baptist church is a mere means of holding title for the members of the

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

corporation and to facilitate transfer or incumbrance of property, when duly authorized by its members pursuant to the rules of its church government, and the rights of a member of the incorporation are one thing, and his rights as a member of the church, worshipping in the building owned by the corporation, is quite another thing, under Gen. Acts 1919, p. 117, and Code 1907, §§ 3613, 3614.

**4. Religious societies ⊙⇒31(2) — 'A Baptist church corporation cannot sue without authority from congregation.**

A Baptist church corporation, "congregation ruled," cannot bring an action to enjoin interference with the church property and prohibit parties from governing the church, in the absence of authority granted to it by the congregation for the institution of the suit, under Gen. Acts 1919, p. 117, and Code 1907, §§ 3613, 3614.

**5. Parties ⊙⇒76(1) — Lack of authority to bring suit properly raised by plea.**

Lack of authority of a church corporation for bringing a suit was properly raised by plea.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by the Sixteenth Street Baptist Church, a corporation, against R. A. Blount and others, to enjoin interference with the Church property and prohibit certain parties from governing the Church. From a decree declining to discharge the injunction and overruling pleas in abatement, defendants appeal. Reversed and rendered.

John W. Altman, of Birmingham, for appellants.

After citing and quoting extensively from Pendleton's Manual of the Baptist Church, counsel insists that the deacons, or trustees, or both, without special authority delegated to them by the conference of the majority of the members of the church, were without power to order the filing of the bill or to execute the bond. 37 Wis. 39, 19 Am. Rep. 747; 109 N. Y. 512, 17 N. E. 410. The action taken by a majority at the regular conference in March was the action of the church. 23 N. J. Eq. 102. The action taken after services at a later date in March did not amount to the ratification of the action of the trustees and deacons. Authorities supra. Civil courts deal only with civil and property rights. 131 Ala. 234, 32 South. 575, 90 Am. St. Rep. 33.

Beddow & Oberdorfer and C. B. Powell, all of Birmingham, for appellee.

The allegations of the bill here must be taken as true. 123 Ala. 145, 26 South. 324. The affirmative averment to the answer, not responsive to the bill, are not entitled to weight. 117 Ala. 591, 23 South. 637; 17 Ala. 667. Equity may be invoked to prevent an interference with the building for worship, or to control or to settle property rights. 149 Ala. 145, 43 South. 8, 8 L. R. A. (N. S.) 1031, 123 Am. St. Rep. 27. The will of the majority of the Baptist Church governs and controls. 166 Ala. 345, 51 South. 947, 139 Am. St. Rep. 41; 202 Ala. 308, 80 South. 373; 203 Ala. 185, 82 South. 435; 187 Ala. 273, 65 South. 390. The regularly appointed pastor was entitled to the use of the parsonage and the building, and the control of the whole religious service of the church. 23 R. C. L. §§ 28 and 35. As to the authority of the attorneys to act, see 152 Ala. 243, 44 South. 637, 126 Am. St. Rep. 30; 151 Ala. 272, 44 South. 96; 142 Ala. 609, 38 South. 662; 6 C. J. 635; 159 Ala. 645, 49 South. 255.

THOMAS, J. The bill by the Sixteenth Street Baptist Church, a corporation, was against certain of its members and one other not a member, and prayed injunction to prevent them or their servants, attorneys, and agents from interfering with the pastor and other named officers of the church in conducting and providing for the services held. from interfering in the use and occupation of the church and control thereof by its board of deacons, from interfering with said board and the appointment of and invitation to ministers to fill said pulpit, and from interfering with said named officers in the control of the church finances and the custody thereof.

[1] Objections to the bill, on the ground that injunctive relief may not be had to prevent a violation of the criminal law of the state, are inapt where the primary purpose is that complainant's right to operate and enjoy its properties as a church and by its congregation is so interfered with as to amount to an impairment of its right of property, or that to comply with or submit to the insistence of respondents would amount to an invasion and destruction of the property rights of complainants. Harris v. Barrett, 89 South. 717;[1] Board of Com'rs of City of Mobile v. Orr, 181 Ala. 308, 61 South. 920, 45 L. R. A. (N. S.) 575; Hill v. Cameron, 194 Ala. 376, 69 South. 636; Ward v. Markstein, 196 Ala. 209, 72 South. 41; Hardie-Tynes Mfg. Co. v. Cruise, 189 Ala. 66, 81, 66 South. 657; Ex parte State ex rel. Martin, 200 Ala. 15, 75 South. 327; Renfroe v. Collins & Co., 201 Ala. 489, 78 South. 395; City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 South. 117.

In this jurisdiction we have adhered to the rule that equity will not interfere with the enforcement of criminal law or check the activities of prosecuting officials when the injury inflicted or threatened is merely the vexation of frequent arrest and punishment for crime (Burnett v. Craig, 30 Ala. 135, 68 Am. Dec. 115; Ex Parte State ex rel. Martin, supra; Brown v. Birmingham, 140 Ala.

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1] Ante, p. 263.

590, 37 South. 173; Old Dom. Tel. Co. v. Powers, 140 Ala. 220, 37 South. 195, 1 Ann. Cas. 119; Pike County Dispensary v. Brundidge, 130 Ala. 193, 30 South. 451; Postal Tel.-Cable Co. v. Montgomery, 193 Ala. 234, 69 South. 428, Ann. Cas. 1918B, 554); yet, where required to protect a property right, it may be done by injunction, if it be a case within the exceptions that are recognized (Brown v. Birmingham, supra; Mobile v. Orr, supra; Montgomery v. Orpheum Taxi Co., supra; Bryan v. Birmingham, 154 Ala. 447, 45 South. 922, 129 Am. St. Rep. 63; 5 Pom. Eq. Jur. § 354, p. 635; Dobbins v. City of Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; City of Austin v. Austin City Cem. Ass'n, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; City of Atlanta v. Gate City Gaslight Co., 71 Ga. 106; Glucose Ref. Co. v. City of Chicago (C. C.) 138 Fed. 209.

A vital question was presented by respondents' special plea, incorporated as a part of the respective answers:

"(1) That the Sixteenth Street Baptist Church, a religious corporation, did not, in any manner or in any wise, authorize the institution of this action which was begun by the filing of the bill of complaint in this cause.

"(2) That said church did not, in conference or otherwise, authorize any one to begin such an action on its behalf, and that no one has nor had authority, from a business meeting, conference, or otherwise of said religious corporation, the power or authority to institute on its behalf the cause of action which was begun by the filing of the bill of complaint herein."

The inquiry propounded under these pleas and evidence supporting the same is whether the Sixteenth Street Baptist Church, a religious corporation organized and existing under the laws of Alabama—a congregation governed corporation—is shown to have granted authority for the institution of the instant suit.

[2, 3] It is not contradicted, and is assumed as true, that the Baptist Church is a congregation of believers, united for the purpose of religious worship, and that it is independent of all other organizations, and is self-governing. The incorporated body is nothing more or less than an incorporated board of trustees of such organization, made up generally of members of the ecclesiastical body, holding title to property, having certain or limited control thereof, and subject to direction over its control, transfer, or incumbrance, under the guidance and direction of its congregation; and it may be, in some instances, the care and management of the physical properties is with them. The courts take judicial knowledge of general religious matters. 23 C. J. p. 117, § 1926, p. 160, § 1983; Malone v. Lacroix, 144 Ala. 648, 41 South. 724; Humphrey v. Burnside, 4 Bush (Ky.) 215.

In the first place, speaking generally, the membership in the corporation is in no sense the same as membership in the Baptist Church, as a religious congregation of believers. This distinction is brought out by Judge Cooley, in the case of Hardin v. Trustees of the Second Baptist Church, 51 Mich. 137, 16 N. W. 311, 47 Am. St. Rep. 555, where the action was by a member in good standing to recover damages for expulsion from the church. In that case, among other things, it was said:

"Connected with the corporation the statute contemplates that there will be a church, though possibly this may not be essential. In this case there is one. The church has its members who are supposed to hold certain beliefs and subscribe some covenant with each other if such is the usage of the denomination to which the church is attached. The church is not incorporated, and has nothing whatever to do with the temporalities. It does not control the property of the trustees; it can receive nobody into the society and can expel nobody from it. On the other hand, the corporation has nothing to do with the church except as it provides for the church wants. It cannot alter the church faith or covenant, it cannot receive numbers, it cannot expel members, it cannot prevent the church receiving or expelling whomsoever that body shall see fit to receive or expel. This concise statement is amply sufficient to show that this suit has no foundation."

The same position was elaborated by Mr. Justice Lurton (Nance v. Busby, 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801), in a case it is true, of the Primitive Baptist Church; but the organization of that church is analogous, if not identical, with what are commonly called Missionary Baptist Churches, of which church was the complainant. He reviewed the authorities to great extent, cited Hardin v. Baptist Church, supra, saying in the course of his opinion:

"Where a society has become incorporated for the purpose of maintaining religious worship, the rights of a member of the incorporation are one thing, and his rights as a member of the church worshipping in the building owned by the corporation may be quite another thing. His rights in the corporation and as a corporator will depend exclusively upon the law creating the corporation."

These two opinions and the authorities collected amply support the proposition that the corporation is the mere invention of a means of holding title for the benefit of the members of the corporation, and to facilitate its transfer or incumbrance of property, as may be desired for the business of the corporation, when duly authorized and directed by its membership, pursuant to the rules of its church government.

The second question is, What are the powers of the congregation and the character of the church government? Judge Lurton said of this:

"This church is an independent congregational church. Discipline is administered by the body of the congregation. It has no body of canon law prescribing procedure in such cases. No written rules prescribe notice or require a trial. A majority of those members voting when the church sits in conference determines the result upon any motion or resolution disciplining a member. * * * The congregation to which complainants belonged was congregational and independent. It was a pure democracy. The power of excommunication reposed in the majority of the members voting at any conference. From its action there was no appeal. This fact may be a defect in the organization. It is not for us to say, nor for those affected by its judgments to complain. They voluntarily submitted themselves to the absolute power of a majority. They tacitly agreed to abide by and submit to such judgment. This church, when sitting in conference was a judicature. It may have erred in construing the usage and practice of the church to justify a proceeding for expulsion without notice to the accused of the charges, and without giving him opportunity to vindicate himself. It, however, proceeded to adjudge excommunication. Its act was the act of the church." Nance v. Busby, 91 Tenn. 318, 334, 335, 18 S. W. 877, 881 (15 L. R. A. 801).

This case, in line with the evidence adduced on the trial, distinctly declares the democratic character of the Baptist Church, and determines where the most vital power—the power of excommunication—rests.

Coming to our own cases, it has been observed that each religious denomination has its own distinct form of government, and the courts refrain, as far as possible, from interfering when the office or function is purely ecclesiastical or spiritual. Hundley v. Collins, 131 Ala. 234, 32 South. 575, 90 Am. St. Rep. 33. To the end that church property may be the better conserved and transferred, it is provided by statute that churches may incorporate. Gen. Acts 1919, p. 117; Code, §§ 3613, 3614; Walker v. McPherson, 199 Ala. 486, 74 South. 449. There is nothing in our decisions and the statutory provisions obtaining which in any way stipulates that the incorporated religious bodies or churches shall be governed otherwise than by their particular form of church government. The fact of incorporation is not a surrender of anything to another or different entity; but it is simply the creation of a legal entity to hold its property, convey or incumber the same pursuant to the due authorization of its membership—the rules of the church made and provided for the expression of the will and judgment of its members after due notice.

We have carefully examined the record as to what took place before and after the institution of the suit. This church being of the Baptist denomination, which both sides admit to be "congregation governed," we deem it proper to quote below the duties and powers of the officers of the denomination,

and reference is had to Church Manual of Baptist Churches by Pendleton, which manual was used by both sides on the trial. The powers and duties of trustees are declared as follows:

"The province of trustees is quite restricted. They have nothing to do with the spiritual affairs of the church. They cannot control the house of worship, saying how it shall be used, or who shall preach in it, and who shall not. The church must do all this. As church members the trustees may with other members decide what shall be done with church property, whether the house of worship shall be sold and another built, etc.; but as trustees they can do nothing in these matters. When the church so orders, they may convey or receive title to property, sue in the courts, etc., but their business as trustees is exclusively secular. They cannot in the capacity of trustees perform any spiritual function. A practical remembrance of this fact would have saved not a few churches from trouble." Pages 38, 39.

The powers and duties of the deacons are thus declared:

"As deacons were appointed at first 'to serve tables,' it may be well to say, there are three tables for them to serve: (1) The table of the poor; (2) the table of the Lord; (3) the table of the pastor. The pecuniary supplies to enable them to serve these tables must be furnished by the church. The custom of taking a collection for the poor when the Lord's Supper is administered is a good one, and worthy of universal adoption. It is suitable at the close of the solemn service to think of the pious poor, whom sickness or some other misfortune may have kept from the feast." Pages 33, 34.

And again, relative to the deacons and the church clerk, is this declaration:

"While pastors and deacons are the only permanent scriptural church officers, it is a prudential arrangement in all churches to have a clerk; and owing to the requirements of the civil law in some places, it is necessary to have trustees. The business of the clerk of a church is, of course, to keep a record of the proceedings of the body. To secure accuracy in the record, at every business meeting the proceedings of the previous meeting should be read, corrected (if correction is necessary), and approved by the church." Page 37.

And relative to pastors:

"The administration of ordinances as well as the preaching of the Word is proper business of the pastor." Page 26.

This denomination has long been "a pure democracy," each church governed entirely by a majority of its members; the youngest member having the same voice in the management of its affairs as has the pastor, the deacon, or the trustees, and until such officer is otherwise directed by a majority vote. Such is its governing body or authority—the majority of its membership present and voting at a duly authorized meeting or confer-

ence for such action or purpose, after due notice thereof.

The fact that one of the several individual churches composing the Baptist Church generally has incorporated under statutory authority does not authorize the corporation to be directed or managed otherwise than by the action of a majority of the members of that church voting at a duly held conference for such church. Of this Mr. Pendleton says:

"The power of a church cannot be delegated. There may be messengers of a church, but there cannot be delegates in the ordinary sense of the term. It would be well for the churches, in their letters to associations and councils, to say messengers, not delegates. No church can empower any man, or body of men, to do anything which will impair its independency." Page 102.

[4] From a careful consideration of the record, we are of the opinion that the institution of this litigation was not duly authorized as provided by this church's government. If the Legislature had intended that any church should be governed differently after its incorporation, it would have so declared. There is no criticism of counsel for filing the suit; it not being a question of counsel acting without authority. They had the right to suppose the action sought was that of the majority; but we do not think the corporation as such was authorized to bring the suit in its name without due authority to that end from its members. This is not shown, nor do we think that the effort to ratify the bringing of the suit, after its institution, was effective. The affairs of the Baptist Church must be conducted in an orderly manner, as required by the rules of the religious denomination. Worrell v. First Presbyterian Church, 23 N. J. Eq. 98, 102, 103; United Brethren Church v. Vandusen, 37 Wis. 54, 59, 60; People's Bank v. St. Anthony's R. C. Church, 109 N. Y. 512, 17 N. E. 408, 410, 411, 413.

As said in Gewin v. Mt. Pilgrim Church, 166 Ala. 345, 349, 51 South. 947, 948 (139 Am. St. Rep. 41):

"The Baptist Church is congregational in its policy. It is democratic in its organization. It is the right of each congregation to rule itself in accordance with the law of the church. The will of the majority having been expressed, it becomes the minority to submit. * * * Where factional divisions occur in an ecclesiastical body, the rule of the civil courts is that 'the title to church property * * * is in that part of it which is acting in harmony with its own law, and the ecclesiastical laws, and usages, customs, and principles which are accepted among them before the dispute began, are the standards for determining which party is right.' * * * It must follow that where a minority withdraws from a church, organized and governed as is the Baptist Church, it relinquishes all right in the property of the church abandoned, and the court, being properly invoked, must so declare."

[5] This authority by the majority, present and voting at a meeting of that church of which due notice had been given, etc., was necessary to subject the Sixteenth Street Baptist Church to the liability of the suit for injunction. The pleas averring lack of authority for bringing suit were sustained by the proof. That issue was properly raised by plea. Methodist Episcopal Church of Cincinnati v. Wood, 5 Ohio, 283, 286. The decree of the lower court is reversed, and a decree will be here rendered dismissing the bill.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.