186 So.2d 102 (1966)
In re GALILEE BAPTIST CHURCH
L. J. HINTON et al.
v.
Thomas THORNES et al.
6 Div. 219-A.
Supreme Court of Alabama.
May 5, 1966.
*103 Norman K. Brown and Arthur Green, Jr., Bessemer, for appellants.
Lipscomb & Lipscomb, Bessemer, and Arthur D. Shores, Birmingham, for appellees.
HARWOOD, Justice.
This is an appeal from a decree of the Circuit Court of Jefferson County, In Equity, attempting to bring order out of a chaotic condition permeating the Galilee Baptist Church of Grasselli Heights, Inc.
It is stated in briefs by each party that the church has no constitution and no bylaws. Both parties, however, agree that the church has operated under a book written by J. M. Pendleton, D.D., entitled "Baptist Church Manual." The flyleaf states that the manual is "designed for the use of Baptist Churches."
In the appendix to this manual under "1. Business Meetings of the Church Associations * * *," it is stated "Where the spirit of Christian love and courtesy prevails very few rules are necessary in the transaction of church business." Unfortunately, the spirit of Christian love and courtesy seems to have been absent in transactions in the controversy which has divided the membership.
We are here dealing with a dispute between two factions in a Baptist church. As stated in Highland View Baptist Church et al. v. Walker et al., 259 Ala. 301, 66 So. 2d 122:
"The Baptist church is congregational in policy. It is democratic in its organization. It is the right of each congregation to rule itself in accordance with the law of the church. The will of the majority having been expressed, it becomes [the duty of the] minority to submit."
The evidence shows that prior to 19 September 1964, Thomas Thornes was pastor of Galilee Baptist Church. Two factions developed within the church, the pro-pastor group and the anti-pastor group. There can be no doubt that this division generated strong feelings on the part of each group.
Sometime prior to 19 September 1964, a considerable number of the members of the church signed written petitions stating in the preamble:
"WHEREAS, it can be truly said that the Galilee Baptist Church is not now `The House of God', and

*104 "WHEREAS, the pastor of the church has refused to call a general conference of the church,
"THE UNDERSIGNED HEREBY PETITION the Board of Deacons, after due and proper notice, to call a general conference of the Galilee Baptist Church to be held at said church for the purpose of taking any action concerning the Galilee Baptist Church and its pastor."
Pursuant to these petitions, nine members of the Board of Deacons of the Galilee Baptist Church, constituting a majority of the duly elected Board of Deacons, did on 6 September 1964, call a general conference of the church to be held on 19 September 1964, at 4 P.M., for the purpose of "taking action concerning the church and its pastor, Rev. Willie Thomas or Rev. Thomas Thornes."
According to the minutes, a meeting of the church members was held on the 19th day of September 1964, and a motion was duly carried that "T. Thornes, Pastor, be relieved of his duties as Pastor of this church as of the 19th day of September 1964." The minutes of this meeting show that this motion was approved by 99 aye votes, one negative vote, and three members not voting.
A further motion was passed at this meeting that "Baptist fellowship be withdrawn from Rev. T. Thornes as of the 19th day of September 1964"; that notice of withdrawal of fellowship be served on the Rev. T. Thornes; that he would not be allowed to worship at the church, and that if he persisted he would be guilty of trespassing after warning.
Further motions were passed that N. Jenkins, Daniel Holiness, Nathanial Dudley, Johnny Vines, Sam Lewis, be removed from the Board of Officers of the church as of the 19th day of September 1964, and a further motion was passed that Johnny Vines, Jessie Whiting, and Daniel Holiness be removed from the banking committee and that David Howard, Lester Strand, and Dave Young, be reinstated as the banking committee.
A further motion was passed that the Galilee Baptist Church hold its annual conference on the 3rd Saturday in November 1964, and that if for any reason the conference could not be held by the 4th Saturday in November, "all salaries of the Galilee Baptist Church shall be discontinued, stopped, and or ceased as of 12.01 A.M. the day following the 4th Saturday in November 1964."
The evidence further shows that on 25 November 1964, some thirty-eight members of the Galilee Baptist Church met at the home of N. Jenkins, and from there proceeded to the church. This was on a Wednesday. When this group arrived at the church, they passed a resolution that a general conference of the Galilee Baptist Church was called for Saturday, November 28, 1964, at 4 P.M., in front of the church building, and that any and all business that could be handled at a general conference be conducted. It was further resolved that a copy of the resolution be attached to the door of the church building.
There is some evidence that actually no meeting was held at the church on 25 November, though there is abundant evidence to the contrary.
It appears that at the meeting attempted to be held on 28 November 1964, both factions of the church showed up. According to the pro-pastor group resolutions were passed voiding everything done at the meeting on 19 September 1964.
According to the anti-pastor group, nothing of this sort occurred. It is clear from the evidence, however, that at the meeting on 28 November 1964, each faction was heckled by the other. When one group would try to transact business the other group would start singing and clapping their hands and in general chaos reigned.
The record shows that on the 22nd of September 1964, the pro-pastor group petitioned *105 the court for an injunction prohibiting the anti-pastor group from disrupting the church services and from exercising further physical control over the church property, allegations having been set out tending to show that the pro-pastor group was physically prevented from entering the church.
Thereafter the anti-pastor group filed their petition for an injunction prohibiting the pro-pastor group from entering the church and alleging that the purported meeting of 25 November 1964, was illegal and not in accordance with the church's discipline and laws.
The two petitions were combined for hearing and after such hearing the court entered a decree adjudging:
"1. That the congregational meeting of September 19, 1964 although regularly petitioned, was never in fact held in such a manner that the business of the congregation of the complainant was adequately or lucidly transacted, and any purported results of that meeting are hereby declared null and void.
"2. That the congregational meeting held on November 25, 1964 be and the same is hereby declared void in that said meeting was not called at a regular meeting of the church for that the same was called at an irregularly called prayer meeting, and that if said call had been regular, the business of that meeting was obstructed due to the discord and confusion that attended said meeting and it does not appear with sufficient clarity that any business of that meeting was legally transacted.
"3. That the Respondent, Thomas Thornes, is legally entitled and is the legally current pastor of the complainant church and by reason of his entitlement of office, he is entitled to occupy the pulpit of the complainant as its said pastor subject to further orders of this court.
"4. That the Respondent, Thomas Thornes, be and is hereby granted the right to occupy the pulpit of the complainant church subject to the following conditions:
"A. That the Respondent, Thomas Thornes, shall call and cause to be had a congregational meeting of the congregation of the complainant church, said call of said meeting to be made March 28, 1965, and that said meeting shall be held on April 4, 1965, for the purpose of allowing the congregation to decide by a congregational vote on the retention or dismissal of the respondent Thomas Thornes; on the election of the other existing officers of the church, including a Board of Deacons, a Secretary and such other offices as are provided by the book of Church Order.
"B. That the results of this election shall be ascertained and made known to this Court as soon as is practicable and convenient."
Each faction has prepared an appeal from the above decree.
It is to be noted that the anti-pastor group in their bill of complaint assert as to the meeting of 19 September 1964, "the said resolution was adopted and passed more than two weeks prior to the date of said conference in accord with the practices and customs of the church and the said resolution was read and announced at least twice to the membership of said church at the regular Sunday services on two different Sundays prior to September 19, 1964."
In answer to this portion of the complaint, the respondents denied that any purported action of the Board of Deacons was announced at any regular Sunday service in reference to the 19 September meeting "and would affirmatively show that an announcement was made by a member of the church, that at the time he made his announcement he stated no authority for making the announcement and merely stated `the officers and members of the Galilee Baptist Church is calling a business meeting of the Galilee Baptist Church on Saturday, September 19, *106 1964, at 4 P.M., and asking all members to be present' and further that a notice in these words was attached to the church door."
It is to be noted that even under the answer that a notice of the meeting was given by a member of the church at a regular Sunday service.
In its decree the court found that the congregational meeting on September 19, 1964, although regularly petitioned, was never held in such manner that the business of the congregation was adequately or lucidly transacted, and that any purported results of that meeting were null and void.
In brief of counsel for the anti-pastor appellants, it is argued that such portion of the decree is not supported by any evidence in the case. It was appellant's assignment of error No. 6 that presents this point.
We are in accord with the argument that such finding is not supported by the evidence in the case.
The minutes of the meeting of 19 September 1964, made a part of the anti-pastor complaint, disclose that the meeting was in all effects regular.
Counsel for the pro-pastor group argue that there were less than 100 members present at the meeting on 19 September 1964, as indicated by the tabulated vote taken at that meeting and that this cannot be deemed the act of the majority of the Galilee Baptist Church, which has a very active and large membership of around 500 members.
As stated in Barton v. Fitzpatrick, 187 Ala. 273 at 279, 65 So. 390, at 392:
"The rule of the common law seems to be that, where a body is composed of an indefinite number of persons, a quorum, for the purposes of elections and voting upon other questions, which require the sanction of the members, consists of those who assemble at any meeting regularly called and warned, although such number may be a minority of the whole, in which case a majority of those who assemble may elect, unless there is a different rule established by statute or valid by-law."
Other than in the pleading, there is no reference to, or evidence, pertaining to the meeting of 19 September 1964. Certainly, there is nothing tending to show that such meeting was not held in such a manner but that the business of the congregation could be transacted.
We hold therefore that the congregational meeting of 19 September 1964, was not void and therefore as a result of such meeting Thomas Thornes was dismissed as pastor of the Galilee Baptist Church.
This being so, the court was without authority to grant to Thornes the right to occupy the pulpit of the church subject to the condition that he call a congregational meeting on the date specified in the decree. Such action would in effect amount to the court taking over and running the affairs of the Galilee Baptist Church. This is beyond the jurisdiction of the court. Williams v. Jones, 258 Ala. 59, 61 So.2d 101. Spiritualities are beyond the reach of temporal courts, and a pastor may be deposed by a majority of the members at a congregational meeting at any time, so far as the civil courts are concerned, subject only to inquiry by the courts as to whether the church, or its appointed tribunal has proceeded according to the law of the church. Barton v. Fitzpatrick, supra.
In reference to the purported congregational meeting held on 28 November 1964, we are in full accord with the decree below that the same was called at an irregularly called prayer meeting, and if the *107 said call had been regular, the business of that meeting was so beset with confusion that no business could have been legally transacted.
The evidence shows that prayer meetings were held on Wednesday nights at the Galilee Baptist Church. The attendance at these meetings was uncertain, and at times such meetings would not be held because no one showed up. The action of the group of 38 members who went from Jenkins' home to the church on the prayer meeting night and called the congregational meeting for the following Saturday afternoon, could hardly be deemed an adequate notice to the full membership of such meeting. Particularly is this true under the uncontradicted evidence that no notice of such meeting was given, nor could have been given under the time limitations, at any regular Sunday service of the Galilee Baptist Church.
It further appears that the court amended its decree by providing that at the congregational meeting to be called by Thomas Thornes as provided in the decree, only those members 18 years of age or older could vote at such congregational meeting.
So far as we can determine from the church manual, all members of a Baptist church are entitled to vote at a meeting, regardless of their age. As to which members are eligible to vote at a congregational meeting, we consider to be a matter solely within the decision of the members of the church, and not a matter for decision by an equity court. Barton v. Fitzpatrick, supra. In our opinion the amendment of the decree was therefore erroneous.
For the errors above pointed out, this decree is reversed and remanded.
Reversed and remanded.
LIVINGSTON, C.J., and GOODWYN and MERRILL, JJ., concur.