944 So.2d 968 (2006)
Dave M. McGLATHERY
v.
Fred RICHARDSON et al.
2040946.
Court of Civil Appeals of Alabama.
June 2, 2006.
*969 Gary P. Wolfe and Larry O. Daniel, Jr., of Wolfe, Jones, Boswell, Wolfe & Hamner, Huntsville, for appellant.
Claude E. Hundley III and Jeffrey T. Kelly of Lanier Ford Shaver & Payne, P.C., Huntsville, for appellees.
CRAWLEY, Presiding Judge.
Dave M. McGlathery, the pastor of the Pine Grove Missionary Baptist Church, appeals an order of the Madison Circuit Court requiring that the church hold a general conference in which it is to consider a grievance filed with the church by Fred Richardson, Robert Drake, John Washington, Othel Washington, Denver A. Betts, Larry Abernathy, Clarence Davis, William H. Readus, Ronnie Smith, W.T. Washington, Dexter Kennedy, Richard Surles, Wayford Davis, and Nero Tucker (hereinafter collectively referred to as "Richardson"). McGlathery first argues that the dispute is an ecclesiastical dispute outside the jurisdiction of a civil court. McGlathery further argues that the order improperly infringes on the authority of the church's Board of Deacons ("the Board"), that the order is too ambiguous to be performed or to be enforceable, and that the trial court's order requiring the general conference is inconsistent with a prior order requiring the church to utilize article X of its bylaws to resolve the grievance. We dismiss the appeal.
At the root of this case is an apparent dispute among some members of the church as to the effectiveness of McGlathery as pastor. Apparently, several complaints against McGlathery were made by parishioners beginning in 2002. The Board, which is composed of 16 of the deacons from the church, investigated those complaints, counseled with McGlathery about concerns raised, and formulated plans to resolve remaining issues. The Board then held a meeting at which the Board, with four members abstaining, passed a vote of confidence in McGlathery.
Some of the members of the church were unhappy with the Board's decision to retain McGlathery and filed an action seeking, among other things, injunctive relief regarding McGlathery's handling of church business. That action was dismissed in May 2003; no appeal followed.
In April 2004, Richardson filed suit against McGlathery and the Board, alleging that they had failed to call a meeting after a specific request, had failed to call periodic meetings, had failed to call monthly meetings, had failed to maintain a roll of active members, had usurped the members' right to participate in a general church conference, and had failed to allow access to church records. Richardson ultimately sought to compel the Board to call a general church conference to permit the church as a representative body to consider the retention of McGlathery. After a hearing, the trial court ordered on August 6, 2004, that the church use the church roll *970 and article X of the church's bylaws to resolve any grievance. When the Board did not call a general conference by October 2004, Richardson filed what he entitled a "Motion to Set Time Limits for Grievance Consideration and Holding of Church Conference," in which he sought to have the trial court order specifically that a general conference be held in order to resolve the grievance. The trial court granted that motion,[1] ordering specifically that the Board call a general conference to meet by January 15, 2005. That order was certified as final pursuant to Rule 54(b), Ala. R. Civ. P. McGlathery appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).[2]
Both parties agree that the appropriate standard of review in this case is de novo review. However, neither party properly characterizes the judgment in the present case, which appears to be a permanent injunction. Because the trial court's judgment was not based on any testimonial evidence and instead was based only upon documentary evidence consisting primarily of the church's articles of incorporation and bylaws, we review the trial court's issuance of the injunction de novo. TFT, Inc. v. Warning Sys., Inc., 751 So.2d 1238, 1241 (Ala.1999); see also City of Dothan v. Eighty-Four West, Inc., 871 So.2d 54, 60 (Ala.Civ.App.2003) (on application for rehearing) (Murdock, J., concurring specially) (explaining that the standard of review of a permanent injunction when the sole issue is an issue of law is de novo review.)
McGlathery contends that this matter arises from an ecclesiastical dispute and, therefore, that it is not within the jurisdiction of a civil court. Richardson argues that the dispute at the heart of this case arises from Richardson's and McGlathery's differing constructions of the church's articles of incorporation and bylaws and not from an ecclesiastical dispute.
"As is the case with all churches, the courts will not assume jurisdiction, in fact has none, to resolve disputes regarding their spiritual or ecclesiastical affairs. However, there is jurisdiction to resolve questions of civil or property rights. Williams v. Jones, 258 Ala. 59, 61 So.2d 101 (1952).
". . . .
"A[n] . . . accurate reflection of present Alabama law on this subject is found in In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (1966). . . .
". . . As was stated in Galilee:

"` . . . Spiritualities are beyond the reach of temporal courts, and a pastor may be deposed by a majority of the members at a congregational meeting at any time, so far as the civil courts are concerned, subject only to inquiry by the courts as to whether the church, or its appointed tribunal has proceeded according to the law of the church. . . . '
"We recognize here there are civil, as opposed to ecclesiastical[,] rights which have cognizance in the courts. A determination of whether the fundamentals of *971 due process have been observed can be made in the judicial arena."
Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746, 748 (Ala.1976).
The Board's decision not to call a meeting to discuss the issues Richardson seeks to raise because the Board did not think that the spiritual health of the church would be advanced by such a meeting is an ecclesiastical decision of the church government and cannot be overridden by a civil court. In other words, the trial court did not have jurisdiction to entertain Richardson's complaint insofar as it requested that the Board be compelled to call a general conference. Accordingly, Richardson's appeal from the trial court's order requiring that a general conference be called to deal with Richardson's grievance is dismissed. See Jones v. Sears, Roebuck & Co., 342 So.2d 16, 17 (Ala.1977) (stating that a void judgment will not support an appeal); and Ruzic v. State ex rel. Thornton, 866 So.2d 564, 568-69 (Ala.Civ. App.2003) (same).
APPEAL DISMISSED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur.
MURDOCK, J., concurs specially, with writing.
MURDOCK, Judge, concurring specially.
I first note that the fact that the church at issue is incorporated under Alabama law does not affect my analysis in this case.[3] As our courts have stated:
"[I]t has been observed that each religious denomination has its own distinct form of government, and the courts refrain, as far as possible, from interfering when the office or function is purely ecclesiastical or spiritual. . . . To the end that church property may be the better conserved and transferred, it is provided by statute that churches may incorporate. . . . There is nothing in our decisions and the statutory provisions obtaining which in any way stipulates that the incorporated religious bodies or churches shall be governed otherwise than by their particular form of church government. The fact of incorporation is not a surrender of anything to another or different entity; but it is simply the creation of a legal entity to hold its property, convey or incumber the same pursuant to the due authorization of its membershipthe rules of the church made and provided for the expression of the will and judgment of its members after due notice."
Blount v. Sixteenth Street Baptist Church, 206 Ala. 423, 426, 90 So. 602, 604 (1921). In particular, in the context of a case involving the predecessor to Ala.Code 1975, § 10-4-20 et seq., our Supreme Court stated:
"Wherever there is an incorporated church, there are two entities, the one, the church as such, not owing its ecclesiastical or spiritual existence to the civil law, and the legal corporation, each separate though closely allied. The church in the ordinary acceptation of the word, is a voluntary association of its members, *972 united together by covenant or agreement, for the purpose of maintaining the public worship of God, observing the ordinances of His house, the promotion of the spirituality of its membership, and the spread of divine truth among others, as they understand and teach it. It is purely voluntary, and is not a corporation nor a quasi corporation. . . . On the other hand, a corporation is formed for the acquisition and taking care of the property of the church, and is in no sense ecclesiastical in its functions.
"In Sale v. The First Regular Bap. Church, 62 Iowa 26 (S.C. 49 Am. Rep. 136) [(1883)], the church was incorporated and the proceeding was by mandamus to reinstate a member expelled by the church. In drawing the distinction between the church and the corporation the court said: `The only and primary object of the corporation is the acquisition and taking care of property. The rules of the church as to the discipline of members have no relation to the corporate property or corporate matters. . . . By virtue of her church membership, the plaintiff became a member of the corporation, organized for religious and ecclesiastical purposes. The corporation was not organized for pecuniary profit. No such profit can accrue to any member. No property interest, or any other valuable civil right, has been affected by the action of the church. The plaintiff has not, and cannot suffer any civil damages whatever. This view is in harmony with Hardin v. Baptist Church, 51 Mich. 137 (S.C. 47 Am. Rep. 555) [(1883)], where numerous authorities are cited.' In this case it was held that mandamus would not lie to restore to membership one claiming to have been wrongfully removed from a church, notwithstanding that church membership was a condition of membership of the corporation. We refer in this connection to the case of Ryan v. Cudahy, 157 Ill. 108 [(1895)], as reported in the 49 vol. Of the Lawyer's Reports Annotated, 353, where will be found on page 384, under the head of `Ecclesiastical Tribunals,' a synopsis of the decisions of a great number of courts on the subject in hand, sustaining the views we announce.
"`The two bodies, viz.: the corporation and the church, although one may exist within the pale of the other, are in no respect correlative. The objects and interests of the one are moral and spiritual; the other deals with things purely temporal and material.' Petty v. Toocker[Tooker], 21 N.Y. 267 [(1860)]; Nance v. Busby, 91 Tenn. 303 [(1892)].
"The foregoing is quite sufficient to show that the spiritual entity called a church, made up of members belonging to it, existing without any special law to that effect, is a different and distinct body in the contemplation of law, from the same body when incorporated under statutes for the purposethe two having different functions to perform, the one religious, and the other civil."
Hundley v. Collins, 131 Ala. 234, 239-41, 32 So. 575, 577 (1902). After Hundley was decided, the Supreme Court further opined:
"It is firmly established that courts decline to assume any jurisdiction as regards the purely ecclesiastical or spiritual feature of the church. . . .
"On the other hand, in many cases we have recognized the right and duty of civil courts to exercise jurisdiction to protect the temporalities of the church, such as where civil rights or rights of property are involved."
Williams v. Jones, 258 Ala. 59, 61, 61 So.2d 101, 102 (1952). More recently, in *973 Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1976), the Supreme Court reiterated the limited jurisdiction of our courts in cases involving churches: "As is the case with all churches, the court will not assume jurisdiction, in fact has none, to resolve disputes regarding their spiritual or ecclesiastical affairs. However, there is jurisdiction to resolve questions of civil or property rights." 340 So.2d at 748 (citing Williams).
The present case arises from allegations that a pastor is overbearing and uncooperative and from a dispute as to how the Board of Deacons is to respond to complaints by some church members as to the church's leadership.[4] The issue in the present case does not relate to church property, nor does it relate to any property right or "civil" right of Richardson as those terms have long been articulated in the context of church disputes. See Hundley, supra, and Williams, supra.
As our Supreme Court stated in Hundley:
"In this case, it is alleged the petitioner was both a trustee and elder of the church. To be a trustee, the statute required him to be a member of the church; and it also appears that under the rules of the church, elders must be members. Trusteeship and eldership are then dependent upon membership in the church. It follows, if one is excluded from membership, his office of trustee or elder ceases by virtue of the act of exclusion. Each of these offices it appears is filled by the members of the church, acting as a church.
"It is averred in the petition, that on the 11 July, 1900, at a meeting of such members of the church as were then assembled, such action was taken as was intended to be an exclusion of petitioner from said church. The petitioner treats the act as one of exclusion, since the prayer of the petition is, that he `be restored to membership in said church, and to his relation as elder therein and thereof.' It is not pretended, *974 nor can it be, that this act was done by the corporation, and not by the church. The petition sets out a paper drawn and presented as the foundation of the church's action. It begins by an admonition addressed to the `Dear Brethren and Sisters,'  an address of Christian endearment usual among church people,  reminding them that it is their solemn duty to obey the word of God, in that it commands them to withdraw themselves from every brother that walketh disorderly, proceeding to aver wherein the petitioner and certain others had been guilty of disorderly conduct; and ends by declaring it to be their duty to withdraw Christian fellowship from petitioner and others. No one can presume that such a paper referred to the brethren and sisters of the church in their corporate capacity; but by the language employed it must be supposed,  since it is not applicable in any other connection,  that those addressed were the members of the church sitting in conference, where the spiritual well-being and concerns of the ecclesiastical, spiritual body were to be considered and passed on. There were no property interests involved, nothing touching what are termed the temporalities of the church as contradistinguished from its spiritualities. The petitioner had no pecuniary interests, in any direction, involved in the proceeding, and it did not touch any of his civil rights at any point. It may be, the church proceeded irregularly according to common usage in such cases; but it is averred, that this church `is of the denomination known as "Disciples of Christ," of which Alexander Campbell was the original preacher, if not the founder,' and that `each church is of itself independent, not subject to the control of any higher or other ecclesiastical judicature.' As an ecclesiastical body, therefore, it was a law unto itself, self-governing and amenable to no court, ecclesiastical or civil, in the discharge of its religious functions. It could make and unmake its rules and regulations for the reception and exclusion of members, and in reference to other matters; and what other body religious or civil could question its right to do so? Certainly, if it violated no civil law, the arm of civil authority was short to reach it. Admitting, therefore, as we must on demurrer, that petitioner had no notice of this proceeding, and that it was irregular according to common usage, the church being independent, and not subject to higher powers, and being a law unto itself for its own procedure in religious matters, what it did towards the expulsion of petitioner was not unlawful, even if it was not politic and wise. If the civil courts may in this instance interfere to question the exclusion of petitioner, they may do so, in any instance where a member of that or any other church is removed, on the allegation of irregular and unfair proceedings for the purpose. This would open a door to untold evils in the administration of church affairs, not consistent with the principles of religious freedom as recognized in this country, where there is no established church or religion, where every man is entitled to hold and express with freedom his own religious views and convictions, and where the separation of state and church is so deeply intrenched in our constitutions and laws.

"These views are in accord with the decisions of other States and of the Supreme Court of the United States."
131 Ala. at 241-43, 32 So. at 577-78 (emphasis added).
*975 Likewise, in In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (1966), our Supreme Court stated:
"[T]he court was without authority to grant to Thornes the right to occupy the pulpit of the church subject to the condition that he call a congregational meeting on the date specified in the decree. Such action would in effect amount to the court taking over and running the affairs of the Galilee Baptist Church. This is beyond the jurisdiction of the court."
279 Ala. at 397, 186 So.2d at 106. Perhaps even more emphatically, in Williams, supra, in which the trial court was asked "to assume control of the conduct of the internal affairs of the church and to hold an election to determine whether Williams should be retained as pastor, after first determining who were members of the church qualified to participate in the election," our Supreme Court stated, "[w]e have been unable to find any authority which even remotely tends to uphold the jurisdiction of the civil courts in a matter of this kind." 258 Ala. at 67, 61 So.2d at 109.
I further note that in Odoms v. Woodall, 246 Ala. 427, 429, 20 So.2d 849, 851 (1945), the Supreme Court stated:
"The civil courts will not take jurisdiction of a controversy arising out of the removal of a minister if the right to the position is merely spiritual or ecclesiastical. But if he has a civil or property right in his position, the civil courts will protect that right."
(Emphasis added.) See also Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich, 426 U.S. 696, 714-15, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) ("[I]t is the essence of religious faith that ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria. Constitutional concerns of due process, involving secular notions of `fundamental fairness' or impermissible objectives, are therefore hardly relevant to such matters of ecclesiastical cognizance." (footnote omitted)).
Richardson argues that because the church did not follow the provisions of its articles of incorporation and bylaws, it is appropriate for a civil court to take jurisdiction over this dispute. As the foregoing authorities illustrate, however, it is the nature of the underlying dispute that determines whether a court has jurisdiction to consider matters of church procedure. As Hundley clearly articulates, if the substantive dispute is spiritual or ecclesiastical in nature, it is irrelevant to the civil court whether the church followed its own procedures, per se; the civil court has no jurisdiction to consider the matter. See also, e.g., Caples v. Nazareth Church of Hopewell Ass'n, 245 Ala. 656, 18 So.2d 383 (1944). Accord Sale v. First Regular Baptist Church, 62 Iowa 26, 17 N.W. 143 (1883); and Evans v. Shiloh Baptist Church, 196 Md. 543, 77 A.2d 160 (1950).
The judgment at issue does not concern Richardson's civil rights or property rights. Unlike Odoms, supra, this case does not involve a claim by a pastor that he has a property or contract right not to be removed from his employment position. Instead, the alleged "right" at issue involves whether a church member has a right to cause the dismissal of a pastor or to cause a meeting to discuss the dismissal of a pastor. In the manner presented in this case, such a "right" is an ecclesiastical matter. The Board of Deacons resisted Richardson's request that it consider the grievance and that it call a general conference to consider the grievance, in part, on the grounds that Richardson's request is part of a protracted attempt by a disgruntled minority to continue strife in the *976 church and that it would be harmful to the spiritual welfare of the church that the Board of Deacons serves to have such a meeting, particularly since the Board had, within the last two years, conducted an extensive investigation and review of McGlathery's services as pastor and given him an overwhelming vote of confidence. In other words, the Board of Deacons has made a judgment that it would not be in the best interest of the church for it to reconsider at this time whether McGlathery should no longer be pastor or to involve the members of the church in such a consideration. The law does not authorize a court to substitute its judgment for that of the duly elected church leaders as to such an ecclesiastical matter.
Despite the foregoing longstanding authority, Richardson cites more recent Supreme Court cases and argues that the issue in this case involves civil rights or property rights and due-process concerns. After reviewing the cases on which Richardson relies, as well as other cases, I am not convinced that the Supreme Court has overruled its longstanding precedent and substantially expanded the jurisdiction of civil courts as to cases like the present case simply on the ground of some alleged "due process" violation.[5] For example, in Yates v. El Bethel Primitive Baptist Church, 847 So.2d 331 (Ala.2002), the Supreme Court noted:
"In Williams v. Jones, 258 Ala. 59, 62, 61 So.2d 101, 104 (1952), we cited several of our cases in which, `the civil courts of this state have taken jurisdiction of disputes between factions of Baptist churches or of churches similarly governed on the ground that property or civil rights were involved.' This case began as one involving the finances, financial assets, and business of the Church, not any of its purely ecclesiastical or spiritual features, and those financial and business aspects of the Church have remained center stage throughout."
Yates, 847 So.2d at 336 (emphasis added). The Supreme Court further stated:
"[The parties] argue no issues of differences in religious faith or creed, and argue no spiritual conflicts, or ecclesiastical doctrine. Rather, the underlying dispute revolves around the property of the Churchcontrol over its financial assets and affairsand not God."
847 So.2d at 346. The Supreme Court then proceeded to address whether the trial court properly considered the circumstances surrounding the contested church election, an issue that was an integral party of determining the rights of parties as to church property and other temporal matters (for example, who, among competing factions, has a right to possess and control church property and finances). See also Murphy v. Green, 794 So.2d 325 (Ala.2000) (underlying dispute as to ownership of church property); Shearry v. Sanders, 621 So.2d 1307 (Ala.1993) (underlying dispute as to whether the pastor could transact business for the church and as to control over church property); Bacher v. Metcalf 611 So.2d 1030 (Ala.1992) (underlying dispute as to the wrongful retention of a church leadership position and misuse of church funds); McKinney v. Twenty-Fifth Avenue Baptist Church, Inc., 514 So.2d 837 (Ala.1987) (underlying dispute as to financial matters and wrongful *977 disruption of religious services); Trinity Presbyterian Church of Montgomery v. Tankersley, 374 So.2d 861 (Ala.1979) (underlying dispute as to control of church property); and Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746 (Ala.1976) (underlying dispute as to misappropriation of church funds). See also Lott v. Eastern Shore Christian Center, 908 So.2d 922 (Ala.2005) (underlying dispute as to access to the church financial records); and In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102 (Ala. 1966) (underlying dispute as to control over church facilities).
Unlike the above-cited cases, the underlying dispute in the present case is not related to the church's financial assets or other property or some other temporal matter; the underlying dispute in the present case arises out of a minority of the church members' interests in voicing their disapproval of the pastor to the majority of the church. Such a dispute is a spiritual or ecclesiastical matter that is beyond the jurisdiction of a civil court. Because the circuit court had no jurisdiction to consider the issue that has been certified for purposes of appeal, its judgment is void, and it will not support an appeal. See, e.g., Roux v. Hamby, 914 So.2d 879 (Ala.Civ.App. 2005). Therefore, I agree that the appeal is due to be dismissed.
NOTES
[1] The trial court apparently granted the motion at a hearing on November 22, 2004, by writing his order in the bottom margin of the motion. That order was never entered on the case-action-summary sheet by the clerk of the court. When the parties moved that the judgment be certified as final pursuant to Rule 54(b), Ala. R. Civ. P., the trial court entered an order by separate paper on December 1, 2004, in which it referred to a handwritten order of November 11, 2004; the December 1 order directed the church to hold a general conference by January 15, 2005. That order was also made final on December 1, 2004.
[2] The Board has not appealed the trial court's order.
[3] The appellate briefs of both parties contain discussion of the requirements imposed on nonprofit corporations incorporated under Ala.Code 1975, § 10-3A-1 et seq. The church in this case, however, was incorporated under Ala.Code 1975, § 10-4-20 et seq. The proper analysis does not depend upon under which of these statutes the church was organized, however, because the issue before us does not entail property or "civil" rights over which the circuit court has jurisdiction. Because no such rights are at issue, it is not necessary to examine the corporate statutes that might otherwise govern how the church in its corporate capacity would be required to address those rights.
[4] Although not critical to my analysis, I note that the church at issue is a Missionary Baptist Church, a church whose form of government is

"a pure democracy, and, apart from some general regulations which have been accepted as a sort of covenant by all the churches of that denomination, each church is a law unto itself in the management of its own affairs. Its organization is congregational, and each church must of necessity be governed by laws which inhere in that form of government."
Barton v. Fitzpatrick, 187 Ala. 273, 278, 65 So. 390, 392 (1914); see, e.g., Manning v. Yeager, 203 Ala. 185, 82 So. 435 (1919). Indeed the bylaws of the church corporation discuss and confirm the congregational nature of the church's government by repeatedly emphasizing that authority within the church derives from "the majority consent of the official active membership of the church." In particular, I note that section III of the bylaws confirms that the members of the Board of Deacons and the pastor serve subject to the authority of the majority of the official active membership of the church. Also, article IX of the bylaws confirms that the members can attend to "major voting matters such as those dealing with selection or changes in the leadership positions of the church, i.e., Pastor or others" at a "special call meeting or a matter that is attended to immediately after morning worship service."
In accord with the foregoing, Richardson takes the position that the majority of the members of the church, not the Board of Deacons or the pastor, constitute the ultimate authority as to the matters at issue. Yet, in a dispute between the parties that has been openly displayed before church members, including Richardson's attempts to call for meetings when the church met to worship, Richardson has not convinced the majority of the members to bypass the Board of Deacons and the pastor and to hold a general church conference. It certainly would not seem that Richardson could be heard to complain to a civil court under such circumstances.
[5] I fail to see how principles of "due process" under the 5 United States Constitution would be implicated in an alleged deprivation that involves no state action. Thus, I assume that the references to "due process" in our pertinent caselaw, see Abyssinia, supra, must mean the process that is due under a church's governing documents or pertinent corporate law, where applicable.