59 N.J. Super. 181 (1960)
157 A.2d 519
HOWARD L. MOORMAN, ET AL., INDIVIDUALLY AND SEVERALLY, PLAINTIFFS AND CROSS-DEFENDANTS-APPELLANTS,
v.
REVEREND J.I. GOODMAN, PASTOR OF THE FIRST BAPTIST CHURCH, ENGLEWOOD, NEW JERSEY, DEFENDANT-RESPONDENT. LEE A. EMERY, PLUMMER PERRY AND THE FIRST BAPTIST CHURCH, ENGLEWOOD, NEW JERSEY, PLAINTIFFS-RESPONDENTS,
v.
HOWARD L. MOORMAN, ET AL., INDIVIDUALLY AND SEVERALLY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 22, 1959.
Decided January 25, 1960.
*182 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Sam Weiss argued the cause for plaintiffs and cross-defendants-appellants (Messrs. Eisenstein & Eisenstein, attorneys).
Mr. Clive S. Cummis argued the cause for respondents (Mr. Henry J. Bendheim, attorney).
*183 The opinion of the court was delivered by SULLIVAN, J.A.D.
This appeal involves the ouster of ten persons from membership in a religious society. The First Baptist Church of Englewood has been in existence for many years. Its present pastor, Rev. J.I. Goodman, came to the church about 1949. He is the focal point of the present dispute, the factual background of which is as follows.
Factionalism had developed in the church over the way its affairs were being handled, and on or about June 4, 1957 a letter was circulated among church members critical of the pastor, the chairman of the board of deacons and the chairman of the board of trustees. The letter was sent by a group of ten church members of which Howard L. Moorman appears to have been one of the spokesmen. Thereafter, on or about July 18, 1957, at an alleged special meeting of church members sponsored by the same group and presided over by Howard L. Moorman, Reverend Goodman was purportedly voted out of office. On August 2, 1957 another meeting of church members was called to consider charges brought against the ten members of the dissident group by the joint boards of trustees and deacons. The substance of the charges was that these persons had circulated among the church membership an unauthorized letter dated June 4, 1957, containing statements which were unfounded, untrue and unchristian. At the meeting the circulating of the letter by the persons in question was admitted and its contents were discussed in detail. After an acrimonious hearing, a resolution was allegedly adopted silencing these persons. Actually the meeting accomplished little and conditions continued to deteriorate.
In January 1958 ten members of the church, including some of those who had been silenced, commenced suit against Rev. J.I. Goodman in the Superior Court, Chancery Division, charging that he had been voted out of the pastorship by the church membership but refused to leave the pulpit. The complaint also charged a mishandling of church finances. Not to be outdone, the First Baptist Church and the chairmen *184 of its boards of trustees, and deacons, on February 3, 1958 filed a Chancery suit against 11 members of the church including those who had commenced suit against the pastor of the church, charging them with interfering with the orderly conduct of church meetings and services, attempting to oust the pastor at a rump meeting, and with other improper conduct.
The suits were consolidated, and at the suggestion of counsel for the 11 members, a consent order was entered appointing a commission to conduct a hearing, take testimony and make findings and recommendations on the following questions:
"1. The definition of a person qualified to vote in a meeting of the First Baptist Church of Englewood, N.J.
2. The legality of the silencing of certain members of the Church.
3. The legality of meetings held under the auspices of Howard L. Moorman and persons associated with him.
4. The right of Reverend J.I. Goodman to continue in office as Pastor of the First Baptist Church, Englewood, N.J."
Three Baptist ministers were appointed to the commission, a hearing was held and a unanimous report filed making recommendations on the questions submitted to the commission. As to point 1, the commission defined who were qualified to vote at church meetings. As to point 2, the commission found the silencing of the members was not legal for reasons given in the report. As to point 3, the commission found that the meetings held under the auspices of Howard L. Moorman and persons associated with him were illegal for reasons stated in the report. As to point 4, the commission held that the right of Reverend Goodman to continue as pastor was a question that could be decided only by a vote of the duly constituted membership of the church. It was recommended by the commission that a meeting of the church membership be held on notice to all members, to make disposition of the charges against the ten persons against whom charges were preferred at the August 2, 1957 meeting, and also to determine whether Reverend Goodman should continue as pastor.
*185 The court accepted the recommendations of the commission and ordered that the two matters suggested by the commission be voted on at meetings of the church membership. The court also directed that due notice of the meetings be given, that the charges in writing be served on the ten members, and that the same three ministers conduct the meetings with full authority to determine all details and procedures thereof.
Pursuant to the court's order, a meeting of the church membership was held on February 8, 1959 to consider the charges preferred against the ten members. The meeting was presided over by the commission of three ministers. The ten persons involved did not appear at the meeting although duly notified of the date thereof. Copies of the charges were served upon them by registered mail. In essence the charges were that these persons on June 5, 1957 had circulated a letter which tended to divide and confuse the church membership. It was also charged that the letter, in breach of church discipline, was made to appear to be an official church communication. At the meeting, the charges were read and voted upon, and "the hand of fellowship withdrawn" from each of the ten persons. (They were ousted from church membership.)
Thereafter another meeting of the church membership was held on March 8, 1959 to decide whether or not Reverend Goodman should continue as pastor. The results of this meeting were omitted from the appendix, but it is obvious that Reverend Goodman was retained as pastor.
The commission then reported to the court that the two meetings had been held and that, in the light of proper Baptist Church practices and procedures, the actions taken at these meetings should be sustained by the court. On June 19, 1959 a final judgment was entered by the court adopting the report and recommendations of the commission and making the same a part of the court's judgment.
An appeal has been taken from that portion of the judgment which adopts the recommendations and report of the *186 commission. However, the single question argued on the appeal is the validity of the ouster. No civil or property rights are asserted. Appellants contend that the expulsion of the ten members from membership was illegal because it was not in accord with proper Baptist Church practices and procedures in that such ouster was voted without receiving any evidence in support of the charges. This issue though is not a proper one for judicial consideration.
Appellants moreover misunderstand the nature of the proceedings before the trial court. The submission of the matters in dispute to a commission which was to make findings and recommendations to the court was by agreement of all parties. The ouster is not by virtue of the judgment entered by the trial judge. The court left the determination of the question of ouster to the church membership and thereafter refused to interfere with the action taken.
"Each Baptist church is a self-governing body, independent of all other churches. Randolph v. Mt. Zion Baptist Church of Newark, 139 N.J. Eq. 605, 609 (Ch. 1947). Its affairs are administered by the membership acting together, and the will of the church is tory, p. 144, and Manual, p. 13."
Harrison v. Floyd, 26 N.J. Super. 333, at page 337 (Ch. Div. 1953).
It is held in this State that with respect to spiritual matters and the administration of the spiritual and temporal affairs of a church not affecting the civil rights of individuals or the property of the corporation, the ecclesiastical courts and governing bodies of the religious society have exclusive jurisdiction and their decisions are final. Livingston v. Rector, etc., of Trinity Church, 45 N.J.L. 230 (Sup. Ct. 1883); Jennings v. Scarborough, 56 N.J.L. 401 (Sup. Ct. 1894); Everett v. First Baptist Church of Sussex, N.J., 6 N.J. Misc. 640 (Sup. Ct. 1928); Cabinet v. Shapiro, 17 N.J. Super. 540 (Law Div. 1952). Cf. Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666 (1872). However, see Hughes expressed by a majority vote of the members. Hiscox, New Direc- *187 v. North Clinton Baptist Church, 75 N.J.L. 167 (Sup. Ct. 1907).
In Everett, supra, the plaintiff had been ousted from membership at a church meeting and sought reinstatement by mandamus. The court refused to take jurisdiction of the dispute and had this comment to make at page 640 of 6 N.J. Misc.
"Courts of law will interpose to control the proceedings of ecclesiastical bodies where a right of property is involved, but, with respect to the spiritual and temporal acts of the church, not affecting the civil rights of individuals or the property of the corporation, the ecclesiastical courts and governing bodies of the religious society have exclusive jurisdiction and their decisions are final. Livingston v. Trinity Church, 45 N.J.L. 230; Jennings v. Scarborough, 56 Id. 401; Nance v. Busby, 91 Tenn. 303; 15 L.R.A. 801.
In the matter before us, no civil right or right of property being involved, the action of the respondent should not be interfered with, and, therefore, the writ of mandamus is denied and the rule to show cause is discharged."
Watson v. Jones, supra, 13 Wall., at page 728, 20 L.Ed., at page 676 states the principle of judicial non-intervention in these terms.
"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if anyone aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that *188 those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for."
Hughes v. North Clinton Baptist Church, supra, is to the contrary and holds that a court will assume jurisdiction over the expulsion by a church of one of its members. The decision however seems to be based on the broad ground that the law applicable to membership in social or fraternal organizations also governs church membership. This holding has been criticized in Annotation, "Suspension or Expulsion From Church or Religious Society and the Remedies Therefor," 20 A.L.R.2d 421, at page 485 (1951). The Everett case, which was decided some 21 years after Hughes, pointedly makes no reference at all to the earlier decision. We hold that Hughes v. North Clinton Baptist Church, supra, is not a correct statement of the law in this State and is not to be followed.
In the matter before us, it is undisputed that the church body had the power to withdraw the hand of fellowship from any of its members. Hiscox, New Directory; Harrison v. Floyd, supra, 26 N.J. Super., at page 337. We hold on the authority of Everett v. First Baptist Church of Sussex, N.J., supra, that the trial court properly refused to interfere with the actions taken by the church membership.
Affirmed.