Appeal from an order enjoining a pastor from occupying the pulpit of a church. We affirm
The case concerns a dispute between pro- and anti-pastor members of a Baptist Church congregation. The defendant, Hugh L. Foster, became pastor of the St. John's Baptist Church in 1975, and shortly thereafter hostility to his pastorate led to factionalism and ultimately to a lawsuit filed in 1977. That controversy was resolved by a judicially supervised vote of the congregation which sustained Reverend Foster as pastor. The factionalism continued, however, and a new and different action was filed on March 13, 1980. The complaint named as plaintiffs St. John's Baptist Church, Inc., and James A. Hardy, et al., these individuals being identified as duly elected members of the Board of Deacons acting on behalf of the church. The complaint alleged that at a regular annual meeting held in October 1979 the membership voted to remove Reverend Foster as pastor but that he had refused to vacate the pulpit and to surrender church property. Injunctive relief was prayed for The defendant moved to dismiss and also counterclaimed. The plaintiffs amended their complaint on June 11, 1980, by adding allegations to the effect that the church, a nonprofit corporation, was governed by by-laws duly adopted by the corporation and which adopted the procedures found in Hiscox's New Church Directory for Baptist churches. The by-laws were attached to the complaint. The amended complaint further alleged that the plaintiffs were duly elected as deacons in 1979, that the defendant had refused to recognize them as such, had not allowed them to participate as deacons, and had deprived them of property rights in the church by conducting a church meeting (on June 8, 1980) at which they were unlawfully removed as members. The plaintiffs further alleged that the defendant, Foster, had breached his contract with the church to render full-time services by maintaining two separate employments. The plaintiffs prayed for rescission of Foster's contract, and for an order that their removal from membership be declared ineffective, that their election as deacons be sustained, and that Foster be enjoined from interfering with their performance of their duties
The defendant moved to dismiss the complaint on the ground that the plaintiffs lacked standing
Following discovery and additional pleadings on matters not essential to the issue before us, the plaintiffs, on October 16, 1981, filed their petition for a temporary restraining order and a mandatory injunction, alleging that at the annual meeting of the church held under the by-laws on October 12, 1980, the defendant Foster was removed as pastor by the affirmative vote of the majority of the members present and that the plaintiffs were duly elected as deacons. It was further alleged that Foster had refused to relinquish the pastorate, was promoting disturbances, and threatened to occupy the pulpit thereafter, with an accompanying possibility of violence should he do so. The temporary restraining order was issued and, following a hearing, a temporary injunction was issued directing the plaintiff-deacons and the defendant-pastor to refrain from entering the premises pending further order The final hearing on the *Page 391 
petition for a mandatory injunction was set for November 24, 1980.[1]
Following that hearing the trial court, having found that Foster had been removed from the pastorate in accord with church rules, enjoined him from attempting to occupy the pulpit and ordered him to vacate the church office and parsonage within four weeks. A proper Rule 54 (b) order was entered and this appeal ensued
Although the defendant raises several issues on this appeal, these center upon the one controlling question: whether his removal was an ecclesiastical matter. If it was, then it follows that he had no property right in his position as pastor
Alabama follows the general rule expressed in Odoms vWoodall, 246 Ala. 427, 429, 20 So.2d 849 (1945):
 The civil courts will not take jurisdiction of a controversy arising out of the removal of a minister if the right to the position is merely spiritual or ecclesiastical. . .
To the same effect is Putman v. Vath, Ala., 340 So.2d 26
(1976)
In his brief the defendant maintains that a contract existed between himself and the church by which defendant was to be given ninety days notice upon dismissal. At the hearing below he introduced into evidence a document executed by himself and Freeman Carter, Jr., Clerk (of the church) and containing a list of "recommendations" which, he testified, were adopted at a meeting of the membership when he assumed the pastorate
We pretermit discussion of this aspect of the case because the narrow issue before us is whether or not the defendant was removed as pastor according to the law of the church. As was stated in Barton v. Fitzpatrick, 187 Ala. 273, 65 So. 390 at 392-3 (1914):
 The pastor of a church in his pastoral office performs a spiritual function. Spiritualities are beyond the reach of the temporal courts. It follows that a church which has employed a pastor, though the employment be for a fixed term and at a fixed salary, may at any time, so far as the civil courts are concerned, depose him from his spiritual office, subject only to inquiry by the courts as to whether the church, or its appointed tribunal, has proceeded according to the law of the church; nor can the payment of his salary, though in arrear, be made a condition precedent to his deposition. And in the case of a church organized on the congregational plan the inquiry is limited to the determination whether in fact the church has acted as a congregation. . . .
[Emphasis added.]
The by-laws of the church invest in each active member the entitlement to vote at all church conferences. The annual church conference is to be held on the Thursday before the second Sunday in October of each year. The defendant does not contest the fact that under the church rules the pastor might be removed at the annual conference by a majority of the members present. The record discloses that the pastor himself announced from the pulpit his inability to attend the conference meeting on that date and changed the date to October 12, 1980
During the course of that meeting at which the defendant presided, certain questions were posed from members of the congregation concerning the incompleteness of the minutes of a prior meeting sought to be adopted. Apparently the number of objections, which the defendant as presiding officer would not recognize, created a degree of turmoil, during which the defendant attempted to dismiss the meeting and, failing in that effort, left the meeting. One of the congregation requested the chairman of the Board of Deacons to preside over the meeting, but he refused. The clerk of the church was then requested to do so, but he also refused, whereupon the congregation elected one of its members as moderator, *Page 392 
and by the unanimous vote of the membership present the pastor was removed
Did these events affect the legality of the annual conference meeting or its decisions? We think not. It was Reverend Foster himself who announced from the pulpit at two Sunday services prior to the October 12 meeting that the annual church conference would be held on October 12, with the acquiescence of the congregation, and he himself announced at the conclusion of the morning service on October 12 that the church would go into the annual meeting. Reverend Foster, having had the benefit of the postponement, now cannot be heard himself to complain about that aspect
His primary contention in that connection, however, is that the turmoil which existed at that meeting necessitated that he adjourn the meeting, which he did before he departed. Under the testimony contained in the record, however, the trial court could have found, as it did find, that the disruption was in major part induced by the pastor who could have maintained order had he remained
In that situation, one not expressly covered in the by-laws, we do not doubt that the congregation had the right to select one of its membership to serve as moderator in order to continue its annual conference. To hold otherwise would vest a power of management in church affairs in the pastor's hands which he clearly does not possess. As Mr. Justice Sayre expressed it in Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345,51 So. 947 (1909):
 The Baptist church is congregational in its policy It is democratic in its organization. It is the right of each congregation to rule itself in accordance with the law of the church. The will of the majority having been expressed, it becomes the minority to submit. . .
See also Abyssinia Missionary Baptist Church v. Nixon, Ala.,340 So.2d 746 (1977). And in Barton v. Fitzpatrick, 187 Ala. 273,65 So. 390, 392 (1914) this Court stated:
 This church [an organization under the faith and practice of the Missionary Baptist Church] is a pure democracy, and, . . . each church is a law unto itself in the management of its own affairs. Its organization is congregational, and each church must of necessity be governed by laws which inhere in that form of government
Under these principles it was proper for the congregation to proceed with its annual conference meeting under the guidance of a moderator of its own choosing
The record supports the trial court in its finding that approximately fifty of the congregation left the meeting while about fifty-nine remained. The by-laws of the church provide that a quorum at any annual church conference consists of twenty active members. As was observed in Barton, supra, at 65 So. 392:
 [E]very meeting, duly assembled, constitutes a quorum of the church [here when at least twenty active members were present] for the transaction of the business for which it is assembled, and a majority of the quorum has the right to speak for the entire congregation, and its expressed will stands as the law of the church until it is changed or repealed by a subsequent meeting with similar authority. . .
By the unanimous vote of those of the congregation who remained, the pastor was not retained. That action discloses adherence to the quoted principle. Thus the trial court was not in error for enjoining Reverend Foster from occupying the pulpit and ordering him to vacate the property
We reiterate that the sole question before us pertains to the church's ecclesiastical right to remove the pastor. We have not decided any issues pertaining to any purported civil or property rights possessed by the defendant
The decree must be, and is, affirmed
AFFIRMED
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur
[1] The proceedings on the defendant's counterclaim were severed and are not before us on this appeal. *Page 393