281 N.J. Super. 459 (1995)
658 A.2d 327
A. PETER ARDITO, FRANCIS J. MCATARIAN, CHRISTINA CIRILLO, DR. JOHN CIRILLO, JOHN HOFBAUER, SR., JULIA BIRCHLER AND ALFRED J. BIRCHLER, PLAINTIFFS,
v.
BOARD OF TRUSTEES, OUR LADY OF FATIMA CHAPEL, A NOT FOR PROFIT CORPORATION OF THE STATE OF NEW JERSEY, FR. EUGENE KWIATKOWSKI, O.F.M., THOMAS F. PORTELLI, ESQ., AND CHRISTOPHER A. FERRARA, ESQ., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Morris County.
Decided January 25, 1995.
*462 Santo Bonanno, for plaintiffs.
Paul Massaro, for defendant Board of Trustees, Our Lady of Fatima Chapel.
Christopher A. Ferrara, Pro Se.
MacKENZIE, P.J.Ch.
The court has been asked by plaintiffs to revisit its opinion and Order of December 28, 1994, in which it granted defendants' *463 motion for summary judgment. The court has read the submissions of all the parties and has weighed the oral arguments of counsel. For the reasons stated herein, the court now denies plaintiffs' motion to set aside the December 28, 1994 Order. Accordingly, I confirm judgment in favor of the defendants.

I.
Plaintiffs instituted this action by verified complaint and order to show cause on February 10, 1994, seeking to temporarily enjoin an annual meeting of the congregation of Our Lady of Fatima Chapel at which the voting members of the Chapel were to elect a new spiritual leader.[1] Although the court entered the order to show cause and granted plaintiffs a hearing, it refused to temporarily enjoin the election on the understanding that the vote could be retroactively invalidated if the evidence warranted. Consequently, at the meeting, the congregation passed a referendum to enter into formal communion with the hierarchy of the Roman Catholic Church by a vote of 134 to 110. In accordance with this mandate, the priests of the Priestly Fraternity of St. Peter were invited enter into a lease agreement with the Chapel and to serve as chaplains there with the permission of the Bishop of Paterson. Prior to that occasion, the Chapel had no affiliation with the Diocese of Paterson. Rather, the Chapel had been founded in 1975 as a Title 16 corporation with the intention that it would provide a house of worship for Roman Catholics who adhered to the pre-Vatican II Latin Mass and sacraments.
The vote at issue herein occurred on February 13, 1994, at the rescheduled annual meeting of the congregation. In accordance *464 with the Chapel by-laws, the annual meeting had originally been scheduled to take place on the first Sunday of February, i.e., February 6, 1994. However, Reverend Eugene Kwiatkowski, O.F.M., the acting pastor of the Chapel, adjourned the meeting and rescheduled it for the following Sunday.[2]
Plaintiffs, dissident members of the Chapel who oppose any affiliation with the hierarchy of the Roman Catholic Church, allege that the February 13 meeting was improperly called, posted, and conducted by Fr. Kwiatkowski because the priest lacked the authority, under the by-laws, to cancel the February 6 meeting and reschedule it for the following week. In particular, plaintiffs contend that paragraph 1 of Article 4 of the by-laws was not observed.[3] Plaintiffs argue that under the terms of Article 4, only the Board of Trustees can adjourn and reschedule an annual meeting of the congregation. Defendants, on the other hand, contend that the February 13 election was entirely valid and seek its enforcement.

II.
As noted in the court's opinion of December 28, 1994, the law would characterize Our Lady of Fatima Chapel as a congregational *465 denomination. A congregational church is an autonomous local body, (see, e.g., Protestant Episcopal Church v. Graves, 83 N.J. 572, 577, 417 A.2d 19 (1980), cert. den. sub. nom., Moore v. Protestant Episcopal Church, 449 U.S. 1131, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981)), whereas a hierarchical church has a "common ruling convocation or ecclesiastical head." Kedroff v. Saint Nicholas Cathedral, 344 U.S. 94, 110, 73 S.Ct. 143, 151, 97 L.Ed. 120 (1952). Because the Chapel had no affiliation with the Diocese of Paterson prior to the vote of February 13, 1994, it was not part of the hierarchical structure of the Roman Catholic Church. Rather, the Chapel was a self-governing entity with its own by-laws. Thus, the chapel is a congregational denomination.

III.
Also as noted in the court's prior decision, the First Amendment circumscribes the authority of civil courts in disputes which concern religious organizations. Watson v. Jones, 13 Wall. 679, 728-29, 20 L.Ed. 666 (1872). With respect to a congregational church, Watson requires a civil court to enforce property decisions made by a majority of the members or the appropriate governing body. Chavis v. Rowe, 93 N.J. 103, 108, 459 A.2d 674 (1983) (citing Watson, supra, 13 Wall. at 728-29).
The Supreme Court offered a second approach to the resolution of church disputes in Presbyterian Church v. Hull Church, 393 U.S. 440, 89 S.Ct. 601, 21 L.Ed.2d 658 (1969). In that case, the Court espoused the application of neutral principles of law to disputes over church property. Id. at 449, 89 S.Ct. at 606. Under this approach, a court can invoke a secular interpretation of church deeds, by-laws and canons, thereby avoiding judicial entanglement in issues of religious doctrine, polity and practice. Jones v. Wolf, 443 U.S. 595, 603, 99 S.Ct. 3020, 3025, 61 L.Ed.2d 775 (1979). When the application of this standard requires judicial involvement in a doctrinal question, however, it may not be relied upon. Maryland & Virginia Eldership v. The Church of God at *466 Sharpsburg, 396 U.S. 367, 370, 90 S.Ct. 499, 501, 24 L.Ed.2d 582 (1970) (Brennan, J., concurring).
New Jersey precedent likewise has established that civil courts have no jurisdiction over "spiritual matters and the administration of church affairs that do not affect the civil or property rights of individuals." Chavis, supra, 93 N.J. at 109, 459 A.2d 674 (citing Moorman v. Goodman, 59 N.J. Super. 181, 157 A.2d 519 (App.Div. 1960) and Jennings v. Scarborough, 56 N.J.L. 401, 28 A. 559 (Sup.Ct. 1894)). Secular matters, however, may be addressed by civil courts, using either the Watson or the "neutral principles" standard, depending on the church structure. Ibid.
The threshold requirement under the latter of these standards is a "judicially-protectible interest." Ibid. Property rights have been held to be a judicially protectible interest. See Hull Church, supra, 393 U.S. at 440, 89 S.Ct. at 602; Jones, supra, 443 U.S. at 595, 99 S.Ct. at 3021. Moreover, the right to worship in a familiar surrounding is a judicially-protectible interest. Baugh v. Thomas, 56 N.J. 203, 208, 265 A.2d 675 (1970). Thus, a civil court may inquire "whether established procedures of a religious organization, as proved, have been followed where a member is expelled from that organization." Ibid.
Applying this legal backdrop to the facts of the instant case, the court finds that it does have subject matter jurisdiction over this dispute. The vote on February 13, 1994 essentially invited the Priestly Fraternity of St. Peter to enter into a lease agreement with the Chapel. The lease agreement, which was executed by members of the Chapel board and the Fraternity as a result of the February 13 vote, constitutes a property interest of the corporation sufficient to invoke the civil jurisdiction of this court.

IV.
Thus, the question becomes whether the February 13 vote was valid. As a threshold matter, the court notes that the provisions *467 of Article 4 were not observed when the annual congregational meeting was adjourned until February 13, 1994. The language of paragraph 1 clearly reserves on behalf of the Board of Trustees the authority to reschedule annual meetings of the congregation. Moreover, Article 7 of the by-laws expressly limits the powers of the Board to three: (1) payment of routine expenses; (2) communication of important information or proposals to the membership; and (3) calling regular or special congregational meetings. Thus, there can be no question that the Board alone had the authority to adjourn the February 6, 1994 meeting and reschedule it for a later date.
Nonetheless, this court will not invalidate the February 13, 1994 meeting for two reasons. First, to the extent that the February 13 vote affected property rights of the Chapel, it is enforceable under the principles of Watson. The Watson Court held that decisions concerning property rights of a congregational church should be upheld by the civil courts, provided such decisions are endorsed by a majority of the members. Watson, supra, 13 Wall. at 728-29. In this case, a clear majority of the members of Our Lady of Fatima Chapel voted to enter a lease with the Priestly Fraternity of St. Peter.
Second, despite the fact that the election resulted in a lease between the Chapel and the Fraternity, the issues addressed by the congregation at that meeting were primarily religious in content. In fact, this court can discern a no more spiritual matter than a determination by the congregation of who should shepherd its flock. The majority of the congregation at the Chapel chose to invite the priests of the Priestly Fraternity of St. Peter to be its spiritual leaders. In a congregational church, it is the will of the majority which must govern. Foster v. St. John's Baptist Church, Inc., 406 So.2d 389 (Ala. 1981) (quoting Barton v. Fitzpatrick, 187 Ala. 273, 65 So. 390 (1914) ("This church is a pure democracy, and, ... each church is a law unto itself in the management of its own affairs. Its organization is congregational...."); In re Galilee Baptist Church, 279 Ala. 393, 186 So.2d 102, 103 (1966) (quoting *468 Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, 51 So. 947 (1909) ("The majority having been expressed, it becomes the minority to submit."). See also Dale R. Agthe, Annotation, Judicial Review of Termination of Pastor's Employment by Local Church or Temple, 31 A.L.R.4th 851, 855 (1984) ("However, in the case of an independent local church, or congregational church, there is no possibility of an appeal to a higher authority within the denomination with the practical result being that such a `tribunal' may consist of particular board of trustees, deacons or the like, or that the right to decide ecclesiastical questions may reside in the congregation.").
As stated above, Our Lady of Fatima is a congregational church. The by-laws of the Chapel expressly place all ecclesiastical authority in the hands of the congregation. Thus, regardless of how the meeting was called, once a majority of the congregation came together, it had the authority to make decisions of an ecclesiastical nature. Moreover, the by-laws take every precaution to prevent the board of trustees from exercising any control over decisions concerning faith or doctrine. Article 7 of the by-laws specifically proscribes the board of trustees from guiding the spiritual or temporal life of the Chapel, while article 4 affords the board only a two-week discretionary window in which to schedule the annual meeting.[4] Clearly, the congregation controls the religious life of the Chapel. To invalidate the February 13 meeting, and with it the vote, would subjugate the will of the majority on the basis of a minor procedural infraction. The court finds that this would be inequitable, since equity regards substance rather than form. Cavanagh v. Morris County Democratic Comm., 121 N.J. Super. 430, 436, 297 A.2d 594 (Ch.Div. 1972); Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 500-01, 144 A.2d 207 (App.Div. 1958).
*469 The court is satisfied that in every other respect, the by-laws were observed. Notice of the February 13 meeting was properly posted on the nave of the Chapel and announced from the pulpit at intervening masses. Fr. Kwiatkowski presided at the meeting and resolved challenges as to voter eligibility in accordance with the terms of the Stipulations of Settlement. Every congregant who was entitled to vote was enfranchised. Ballots were cast in person and by proxy. Plaintiffs cannot identify any eligible voter who was denied the opportunity to cast a ballot. When all the tallies were counted, those who chose to affiliate with the Priestly Order of St. Peter outnumbered those who opposed that affiliation. The only violation was that Fr. Kwiatkowski scheduled the meeting, not the board. However, the court finds that that violation had no effect on the expression of the will of the majority. Notice requirements were satisfied. The congregants attended the meeting. The majority spoke. To borrow a phrase from the world of sports, no harm, no foul. Under these circumstances, the court will not invalidate the February 13, 1994 meeting.[5]
Moreover, the court finds further repose in the knowledge that the lease agreement under which the Fraternity conducts the chaplaincy at the Chapel is subject to renewal by a vote of the members on February 5, 1995.[6] At that time, the majority will either reaffirm its decision of February 13, 1994, or disavow it. In either event, the new expression of the of the will of the majority will take precedence and effect over the old.
*470 Finally, throughout the course of these motions, the parties have made reference to other issues, such as the resignation of trustees, mortgages, etc. Because the complaint was never amended to address any issue other than the validity of the February 13, 1994 election, no other issues are properly before the court.

V.
The motion to set aside the court's Order of December 28, 1994 is denied, and judgment in favor of the defendants is affirmed.
NOTES
[1] The complaint filed in February of 1994 was not the first incidence of litigation between these parties. An earlier lawsuit was filed in 1993 under Docket No. MRS-C-192-93. However, that action was settled when the parties signed and entered two Stipulations of Settlement, which will be referenced later in this opinion.
[2] Fr. Kwiatkowski apparently adjourned the meeting in order to give a representative of the Priestly Fraternity of St. Peter an opportunity to address the congregation. To that point, the Society of St. Pius X, the other "candidate" at the election, had had two opportunities to speak to the congregation, whereas the Priestly Fraternity of St. Peter had had only one.
[3] Specifically, paragraph 1 of Article 4 provides:

The annual membership meeting of the congregation shall be held on the first Sunday in February each and every year except that if such day be impracticable for any reason then the Board of Trustees shall fix a new date not more than two weeks from the date fixed by these By-Laws. The Secretary shall cause to be posted on the door to the nave of the Chapel a notice telling the time and place and agenda of such annual meeting at least ten (10) days before the date of the meeting and the meeting shall be announced from the pulpit at intervening Masses.
[4] The board would have had to reschedule the meeting before February 20, 1994, in any event.
[5] Although this court's ruling is grounded in part on equitable principles, the decision is equally in conformance with the holding of the United States Supreme Court in Watson. As indicated previously, the Watson Court concluded that a civil court must enforce property decisions made by a majority of the members or the appropriate governing body of a congregational church.
[6] Once the meeting is convened, those members present will have the authority to determine the rules of procedure, such as who will preside over the meeting and who will resolve voter challenges. N.J.S.A. 16:1-10.