[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 327 
This appeal involves a property dispute between two factions in the congregation of the York Presbyterian Church in York, Alabama. The trial court entered a declaratory judgment in favor of the minority group and ordered the pastor and the clerk of the session, along with the majority group, to vacate the church property. The pastor and the clerk appealed. We affirm.
 I.
The York Presbyterian Church, Inc. (hereinafter the "church," or "York"), was incorporated under the laws of Alabama on April 18, 1973. The church stated, in its certificate of incorporation, that it would elect trustees to serve three-year terms, and that the trustees would hold the title to all real and personal property belonging to the church. The congregation also adopted a "purpose" clause, which stated that the church was incorporated "for the purpose of teaching and preaching the Christian Religion, especially according to the belief, faith and doctrine of the Presbyterian Denomination or any other denomination said congregation may hereafter become affiliated with, and in doing all things incidental thereto." No amendments have been made to the incorporating documents.
York called the Reverend Martin Murphy (hereinafter "Murphy") as its minister in 1992. Several members of the congregation, including Aubrey Green, J.E. Cobb, and Warren Grant became upset when Murphy joined the League of the South (hereinafter the "League" or "organization"). According to the record on appeal, the League is a civic group that prides itself in Southern heritage, emphasizes the importance of state and local governance, and supports the concept of secession and *Page 328 
the reinstitution of the Confederate States of America.
Murphy solicited church members, including Green, Cobb, and Grant and two seminary students,[1] to join the League. He encouraged nonresident League members to join the church, and the church membership soon included the presidents of the national, state, and county League groups. Murphy also used the church as a contact place for the League and listed the church's telephone number and post office box (without mentioning the church's name) in the organization's literature and on his personal Internet Web site. He used the church's copier to duplicate League fliers and announcements. Although Murphy eventually resigned from the League, after resigning he continued to attend League-sponsored meetings and lectures.
Green, Cobb, and Grant were elected to serve as trustees (there were 13 trustees) beginning on June 8, 1997. During an August 29, 1998, meeting, the trustees selected Green, Cobb, and Grant as officers to serve on the trustee executive committee. A congregational meeting, held on December 13, 1998, resulted in a new trustee election, with the church reelecting Cobb and Grant, but not choosing Green, who had objected to the election on the grounds that no vacancies existed on the trustee board. However, the trustees ratified the August 29, 1998, officer selection at a subsequent trustee meeting on March 15, 1999.
Meanwhile, Green, Cobb, and Grant alerted the Tennessee-Alabama Presbytery of the Associate Reformed Presbyterian Church (hereinafter the "Presbytery"), the regional governing body of the church, about the conflicts within the York congregation. After conducting an investigation, the Presbytery's ecclesiastical commission recommended, among other things, that the church have no connection with the League; it reminded Murphy of his ordination vows; and it rebuked church members who were guilty of shunning. The Presbytery voted a year later to dissolve Murphy's pastoral relationship with the church and to dismiss the church from the Presbytery. Because his church was no longer a member of the Presbytery, Green lost his position as the treasurer of the Presbytery.
During an emergency congregational meeting held the same day of the dismissal, the church voted to form the York Presbyterian Church (hereinafter "YPC" or the "majority group"), as an independent, unincorporated congregation. Despite Green's complaints that the meeting was not authorized by the church session, YPC elected to maintain Murphy as its temporary minister, with the understanding that a more permanent arrangement would be considered later. The majority group claims to own the church building and the manse.
The YPC's desire to own the church property conflicts with the plans of another church created from the same controversy. Those members who did not support Murphy formed and incorporated the York Independent Presbyterian Church, Inc. (hereinafter "YIPC" or the "minority group"). This group also claims to own the property.
Green, Cobb, and Grant, acting as trustees of the church, eventually filed this lawsuit against Murphy; Knox Poole, the clerk of the church's session; Kimmett Geist, the church's treasurer;[2] the Presbytery; *Page 329 
and the General Synod of the Associate Reformed Presbyterian Church.[3] Green, Cobb, and Grant asked the trial court to find that Murphy and Poole had converted church assets for the League's purposes and to declare Green, Cobb, and Grant to be trustees with control over the church's assets and property. They later amended their complaint to include an ejectment claim when Murphy, Poole, and the majority group refused requests to vacate the church premises.
The parties (other than Grant) stipulated that, because of chronic illness and incompetence, Grant would not testify at trial. Upon the motion of Green and Cobb, the trial court later struck Grant as a plaintiff.
The trial court held that Murphy and Poole had wrongly converted church property for League purposes. The court also concluded that Green and Cobb were the trustees of the church and had the right to possess the property and the authority to determine which of the two new congregations would possess the church's real and personal property. Finally, the court ordered Murphy, Poole, and the majority group off the property and gave the minority group the right of immediate possession. Murphy and Poole appealed.
 II.
This appeal presents the following issues: (1) Does the United States Constitution and/or the Alabama Constitution prevent the adjudication of this case on the basis that it involves a spiritual matter? (2) Is the judgment holding that the appellants converted the assets of the church for the benefit of the League supported by the evidence? (3) Is the judgment holding that the appellants failed to act in conformity with the Presbyterian Doctrine of the Associate Reformed Presbyterian Church supported by the evidence? (4) Is the judgment holding that Green and Cobb are among the church's trustees and are members of the trustee executive committee supported by the evidence? (5) Is ejectment an appropriate remedy in this case? (6) Did the trial court err in admitting certain exhibits and accompanying testimony? (7) Did the trial court err by denying the appellants' posttrial and postjudgment motions to exclude a deposition admitted at trial? (8) Did the trial court err by denying the appellants' postjudgment motions to exclude certain exhibits? and (9) Did the trial court err in admitting the interrogatory answers of a nonparty?
 III.
The trial court's decision is entitled to a presumption of correctness. Under the ore tenus standard of review, a presumption of correctness accompanies the trial court's judgment entered in a nonjury case when it has made findings of fact based on disputed oral testimony, and this Court will not reverse such a judgment unless it is shown to be plainly and palpably wrong, considering all of the evidence and all inferences that can be legally drawn from the evidence. McCrary v.Butler, 540 So.2d 736, 739 (Ala. 1989).
 Issue One
The appellants contend that the First Amendment of the United States Constitution[4] and Article 1, § 3, of the *Page 330 
Alabama Constitution[5] forbid any court from adjudicating the claims presented in this action because, they say, those issues involve spiritual, ecclesiastical issues. The First Amendment prohibits a court from resolving disputes on the basis of religious practice or doctrine. Presbyterian Church v. Mary Elizabeth Blue Hull Mem'lPresbyterian Church, 393 U.S. 440, 449 (1969). Despite these constitutional limitations, the courts still have jurisdiction to decide cases concerning questions of civil or property rights.Abyssinia Missionary Baptist Church v. Nixon, 340 So.2d 746,748 (Ala. 1977); Trinity Presbyterian Church v. Tankersley,374 So.2d 861, 865 (Ala. 1979). "[T]he courts must decide the property disputes by looking at so-called `neutral principles of law' and not resolve [any] underlying controversies over religious doctrine."Tankersley, 374 So.2d at 866. The issue of who holds title to church property is a civil matter and is not ecclesiastical in nature. Id.
Although it is arguable that spiritual issues prompted the division in the York congregation, this case involves the civil conflicts of trusteeship and property ownership. Because the resolution of these issues requires a court merely to review church records and incorporation documents, without delving into spiritual matters, there is no constitutional bar to a court's hearing this case.
 Issue Two
The appellants argue that the evidence does not support the judgment holding that they converted church assets for the benefit of the League and thereby violated the church's "purpose" clause. However, the record indicates that they used the church as a base for League recruitment, where they approached church members and seminary students and asked them to join the League. The record contains evidence indicating that they also used church resources for League purposes, using the church's copier to duplicate League fliers and printing on literature and placing on the Internet the church's post office box and telephone number as contact points for persons wanting more information about the League.
This evidence was sufficient for the court to conclude that the appellants wrongly converted church assets and violated the purpose clause, which required that the church and its resources be used for faith-based activities.
 Issue Three
The appellants argue that the evidence does not support the holding that their actions were not in conformity with the Presbyterian Doctrine of the Associate Reformed Presbyterian Church. The appellees do not address this argument in their brief.
The trial court found:
 "[T]he congregation of the York Presbyterian Church as presently constituted has conducted its affairs in such a manner as not to conform to the Standards of the Presbyterian Doctrine of the Associate Reformed Presbyterian Church. The Rev. Martin Murphy's conduct is such that [it] does not conform to the Presbyterian Doctrine of the Associate Reformed Presbyterian Church as a Presbyterian minister."
Even though we have carefully considered this argument, we do not understand how it is relevant to this appeal. The *Page 331 
record does not include a copy of the Presbyterian Doctrine to assist us in evaluating the appellants' conduct. Moreover, even if the Doctrine was provided in the record and we concluded that the appellants had violated the Presbyterian tenets, it is not apparent, in a case involving a property dispute, how any violation or lack of violation of these tenets could require a reversal. Thus, we do not reach the merits of this issue.
 Issue Four
The appellants question whether the evidence supports the finding that the appellees are trustees and are members of the executive committee.
The trial court correctly held that the appellees belong to both groups. As stated in its incorporating documents, the trustees at York were elected to serve three-year terms. The appellees were selected on June 8, 1997; thus, their term expired three years later, on June 8, 2000. However, the appellants argue that the appellees' positions as trustees and officers were compromised when the trustees used irregular procedures at a subsequent meeting. When the appellees were elected as officers and executive committee members, Cobb, as the temporary presiding officer, cast a second vote to break a tie, in violation ofRobert's Rules of Order, the procedural book used at the church's meetings. Robert's Rules of Order § 46, at 192 ("The chair cannot, however, vote twice, first to make a tie and then give the casting vote.").[6] According to the appellants, this election was illegal, and the members selected at the December 13, 1998, meeting are the trustees of the church.
This conclusion would be accurate if the trustees, at the meeting on March 15, 1999, had not ratified the August 29, 1998, election of officers, thereby overruling the December election and reinstating Green, Cobb, and Grant as trustees, as trustee officers, and as members of the executive committee.
 Issue Five
The appellants claim that ejectment was inappropriate in this case because the court ordered the members of the majority group, who are not parties to this action, off the church property.
In order for a person to contest an injury, his interests in a favorable judgment must be "tangible," Reid v. City of Birmingham,274 Ala. 629, 639, 150 So.2d 735, 744 (1963), and "concrete," BrownMech. Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala. 1983). "`The absence of adversary or the correct adversary parties is in principle fatal.'" Rogers v. Alabama Bd. of Educ., 392 So.2d 235, 237
(Ala.Civ.App. 1980) (quoting Borchard, Declaratory Judgments at 76 (2d ed. 1941)). Thus, a litigant cannot claim standing to assert the rights of a third party not named in the action. Ex parte Izundu, 568 So.2d 771,772 (Ala. 1990).
The appellants lack standing to contest this portion of the trial court's judgment. Because the ejectment of the majority group is not a concrete injury to the appellants, the only persons who can raise this issue are the members of the majority group who were ejected from the church property. Therefore, the appellants' challenge to the ejectment of the majority group is not properly raised in this appeal.
 Issue Six
The appellants argue that the trial court erred in admitting, over their objections, certain exhibits and accompanying testimony. The exhibits in question (plaintiffs' *Page 332 
exhibits 4, 5, 17, and 18) discussed the League and Murphy's allegiance thereto. Green, through whom the exhibits were introduced, described how he had obtained each exhibit from the Internet Web sites of the League and Murphy. The appellants argue that these exhibits are irrelevant to the conversion claim, under Rule 401, Ala. R. Evid.[7]
The appellees, on the other hand, argue that the exhibits were essential to prove their conversion claim against the appellants.
The trial court has considerable discretion over relevancy issues.Eason v. Comfort, 561 So.2d 1068, 1072 (Ala. 1990). This Court will not reverse the trial court's ruling on a question of relevance unless it is plain that the court committed error, Harper v. BaptistMed. Ctr.-Princeton, 341 So.2d 133, 135 (Ala. 1976), and thereby abused its discretion in admitting or denying the evidence. Ryan v. Acuff,435 So.2d 1244, 1250 (Ala. 1983).
Our review of the record and the exhibits indicates no abuse of discretion. The exhibits supported the appellees' position that the League does not espouse Christian principles and that the appellants were using church resources for non-Christian purposes. Green's testimony was necessary to describe each exhibit to the court before it was admitted into the record.
 Issue Seven
The appellants contend that the trial court erred by denying their posttrial and postjudgment motions to exclude from the trial record allegedly irrelevant portions of the deposition of Kimmett Geist. The appellants submitted at trial a list of those portions of the deposition that they argue are irrelevant,[8] under Rule 401, Ala. R. Evid.[9]
The trial judge admitted the deposition, "subject to [the appellants'] objections." Despite these objections and in apparent reliance on these questionable segments of Geist's testimony, the trial court wrote: "While its literature claims that the League of the South professes no racial prejudices at least its member Rev. Martin Murphy has exhibited a bias and prejudice against women."
The appellees state that the entire deposition is relevant because it demonstrates that the League proclaims non-Christian beliefs and that Murphy testified falsely when he said that he was no longer associated with the organization.
We will not address this issue. We have been cited no caselaw regarding motions to exclude evidence after trial and after judgment. Furthermore, we do not understand how the question whether Murphy is biased against women pertains to an appeal regarding a property dispute. Thus, even if the trial court erred in relying on the deposition, and we do not hold that it did, the error would not require reversal.
 Issue Eight
The appellants argue that the trial court erred by denying their postjudgment motion to exclude two exhibits that they claim were inadvertently admitted into the record. According to the appellants, plaintiffs' exhibits 6 and 17 contain additional pages that the appellants say were not presented to their counsel before they were admitted at trial. The record contains *Page 333 
no testimony regarding these extra documents.
Because the appellants did not object to the exhibits at trial, they did not preserve this issue for appeal. Ex parte Williams, 571 So.2d 987,989 (Ala. 1990). In any event, it is the responsibility of the parties, through their counsel, to review the contents of exhibits before they are introduced. See, generally, Averett v. Averett, 255 Ala. 606, 610,52 So.2d 371, 375 (1951) (stating that all parties, once in court, must, either themselves or through their attorneys, keep track of their case).
 Issue Nine
Finally, the appellants challenge the admissibility of the interrogatory answers of R.C. Sproul, Jr., a nonparty to this action. Rule 33(a), Ala.R.Civ.P., provides that "[a]ny party may serve upon any other party written interrogatories." (Emphasis added.) Because the rule clearly states that parties can serve other parties, it follows that parties cannot serve interrogatories on a person who is not a party to the action. 2 Charles W. Gamble, McElroy's Alabama Evidence § 290.01(02)(g) (5th ed. 1996).
Even if the trial court erred when it admitted Sproul's interrogatory answers, that error would be harmless because the record contains other evidence that in itself would be sufficient to support the trial court's judgment. Thus, any error in this regard does not require reversal.
 Conclusion
The trial court's judgment is affirmed.
AFFIRMED.
Hooper, C.J., and See, Brown, and England, JJ., concur.
[1] Murphy established at the church a seminary affiliated with the Greenville Presbyterian Theological Seminary, of Greenville, South Carolina.
[2] The trial court later granted Green, Cobb, and Grant's motion to strike Geist as a defendant.
[3] The trial court dismissed as defendants the Presbytery and the General Synod.
[4] Amendment 1 of the United States Constitution states:
 "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ."
[5] Article 1, § 3, of the Alabama Constitution states:
 "[T]he civil rights, privileges, and capacities of any citizen shall not be in any manner affected by his religious principles."
[6] In the minutes of the August 29, 1998, meeting, the secretary noted that the meeting was conducted in accordance with Robert's Rules ofOrder.
[7] Rule 401, Ala. R. Evid., reads:
 "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
[8] The appellants sought to exclude testimony regarding derogatory comments Murphy made about women and African-Americans.
[9] The text of Rule 401 is quoted in note 7.