PITTMAN, Judge.
In 1921 a parcel of property was conveyed by deed to Alberta, Obie, Charlie, and Edward Sconyers, their heirs and assigns. Alberta died, leaving two children, Charlie Mae Dixon and Reece Smith, Jr. In 1979 a deed conveying the property to Alberta’s children and the children of Amos Sconyers was prepared and recorded:
*62 “The purpose and intent of this deed is to convey title to the Grantees who are the eight children of Amos Sconyers plus the two children of [Alberta] Sco-nyers ..., deceased, to-wit: Charlie Mae Dixon and Reece Smith, Jr. Each of the eight Amos Sconyers children named as Grantees will own 1/9 interest in the property and Charlie Mae Dixon and Reece Smith, Jr., will each own an undivided 1/18 interest.”
(C. 20.) The 10 grantees mentioned in the 1979 deed include: Obie Sconyers, Edward Sconyers, Charlie Sconyers, Roy Sconyers, Charlie Mae Dixon, Reece Smith, Jr., El-nor Sconyers Honsby, Rosie Lee Sconyers Wallace, Cora Sconyers Riggins, and Annie Mae Sconyers Broxton. Edward Sco-nyers and Rosie Lee Sconyers Wallace died leaving no spouses or children. Obie Sconyers, Cora Sconyers Riggins, and Charlie Mae Dixon have also died.
In 1998 Charlie Sconyers sold timber off of the property to Southern Forestry Products, Inc. (hereinafter “SFP”), for $28,000. He retained $5,600 for himself, and gave $5,600 each to Roy Lee Sconyers, Elnor Hornsby Sconyers, Annie Mae Sco-nyers Broxton, and Christine Banks[1] (hereinafter “the recipients”), purportedly representing each’s one-fifth share in the property. The children of Obie Sco-nyers — Gloria Sconyers, Lida Smith, Johnny Sconyers, Annie Rey Clark, and Obie Gene Reece, all of whom are the plaintiffs in this case — received no money. They claim that, based on their interest in the property, which they claim as descendants of their deceased father, one of the original grantees, they should have been consulted regarding the sale of timber on the property, and should have received a 1/6 share of the proceeds. The plaintiffs sued their uncle, Charlie Sconyers, alleging conversion.
The trial court stated in its final order that the recipients of the proceeds from the sale of the timber, all of whom were joint owners in the property, were necessary parties to the action brought by the plaintiffs. See Rule 19, Ala. R. Civ. P. Therefore, because they were not named as parties to the action, Charlie Sconyers was liable only for damages in an amount of “two-fifteenths” of his share of the proceeds (i.e., $746.66). The plaintiffs appealed the trial court’s judgment.
The issues presented on appeal are:
1. Whether the trial court erred in determining that Charlie Sconyers was authorized by the other grantees to sell the timber on the property; and,
2. If he was, whether the trial court properly calculated the damages and whether the court erred in failing to award interest to the appellants.
Because we conclude that the evidence presented in the record plainly and palpably contradicts the findings of the trial court, we reverse and remand. Because our resolution of the first issue necessarily disposes of this action, we do not reach the second issue.
The appellants contend that the trial court’s damages award was insufficient, although it determined that Charlie Sco-nyers had improperly converted money rightfully due them. Specifically, they argue that the trial court erred in determining that the evidence supported a finding that Charlie Sconyers had negotiated with the other grantees to sell the timber and to distribute the proceeds from the sale. They also specifically argue that the trial court erred in determining that the four *63 other recipients were necessary parties to this action.
Under the ore tenus standard of review, a presumption of correctness accompanies a trial court’s judgment entered in a nonjury case when it has made findings of fact based on disputed oral testimony. We will not reverse such a judgment unless it is shown to be plainly and palpably wrong, considering all of the evidence and all the inferences that can be legally drawn from the evidence. See Murphy v. Green, 794 So.2d 325 (Ala.2000), citing McCrary v. Butler, 540 So.2d 736, 739 (Ala.1989).
Despite the heavy burden imposed by the ore tenus standard, our review of the record indicates that the trial court erred in finding that Charlie Sconyers had negotiated in good faith with the other grantees in deciding to sell the timber on the property and in distributing the proceeds. In fact, his testimony refutes the trial court’s findings. Charlie Sconyers testified that when he was visiting one of his sisters, an employee of SFP came to his sister’s house and tried to talk with her regarding SFP’s desire to buy the timber on the Sconyerses’ property. Charlie Sco-nyers stated that his sister told the SFP employee to negotiate with him instead of with her. Charlie Sconyers testified that he and the SFP employee walked through the property to look at the timber and that the SFP employee wrote him a check, purchasing the timber, right on the spot.
Although we understand how, perhaps, Charlie Sconyers might have misconstrued his sister’s directive to the SFP employee to negotiate with him as her implied consent to his negotiating with SFP on her behalf, by Charlie Sconyers’ own admission he and the other recipients did not consult one another on the decision to sell the timber or how to divide the proceeds. There is no indication in the record as to which sister might have given her implied consent, much less any other evidence that he consulted with the other grantees. Charlie Sconyers testified that he walked with the SFP employee through the property to look at the timber and that the SFP employee issued him a check for the timber. The timber sales contract, a copy of which is contained in the record, lists only Charlie Sconyers as the “seller” and is signed only by him. Explaining how he decided to distribute the proceeds, Charlie Sconyers stated that he “just knowed there was five of us left and I just figured up the money myself and give it out to them.” When Charlie Sconyers was asked why he decided to split the $28,000 in five shares only, he responded: “[BJecause five of us was the only ones of the main, living. [Obie Sconyers], ... [the plaintiffs’] father, ... had sold some timber before and bought the land that they lived on right now. And he didn’t offer nobody a penny.” He further explained that he did not give any money to Cora Sconyers Riggins’ children or Reece Smith, Jr., because “they weren’t here” and he did not know where they lived. Therefore, the evidence in the record indicates that Charlie Sco-nyers did not negotiate in good faith with the other grantees in deciding to sell the timber and distribute the proceeds; the trial court’s findings to the contrary are plainly and palpably wrong. See Murphy, supra, citing McCrary, supra. We reverse and remand.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and MURDOCK, JJ„ concur in the result.

. Banks is a half-sister of Alberta, Obie, Charlie, and Edward Sconyers. However, she was not named in either the 1921 deed or the 1979 deed.